ABIGAIL E. SANFORD *vs*. BENJAMIN F. BULKLEY.

The certificate of the acknowledgment of a deed was in the following form:—
" Personally appeared          signer and sealer of the foregoing instrument and acknowledged the same to be his free act and deed; before me, *A. B.* Notary Public." Held to be sufficient.

A tender must be unconditional and unqualified, and if there is either an express or implied demand of a receipt or that the money shall be received in full, it will not be a sufficient tender.

Where there are two co-mortgagees, and one has become the owner of the equity of redemption, the other can sustain a bill for a foreclosure against him, to the extent of his proportionate interest.

The respondent had become the owner of an equity of redemption in certain property mortgaged to sundry creditors of the original owner, and of a part of the mortgage debts, under an arrangement with all parties interested by which he was to pay 57 per cent on the mortgage debts with interest computed to the 1st day of June, 1858. A party who had become the owner of the other mortgage debts afterwards obtained a decree of foreclosure against him, by which he was required to pay 57 per cent upon the amount of the mortgage debts held by him, including interest on the debts to June 1, 1858, and interest on the 57 per cent of this amount from that date to the date of the decree. Held, that there was nothing erroneous in the requirement that interest should thus be paid on interest, since the 57 per cent, which under the arrangement the respondent was to pay, was based upon a sum to be made up of interest as well as principal.

BILL for a foreclosure.    Tried before *Park, J.*

William O. Sanford, on the 1st day of January, 1858, mortgaged the premises, then owned by him in fee, to a large number of his creditors, to secure their several claims against him.    Being indebted to sundry other persons and not having property enough to pay or secure them in full, he shortly after

made an arrangement with these latter creditors under which he was to convey to them all his property, including his interest in the mortgaged premises, and to procure from his mother, the present petitioner, a conveyance to them of certain property owned by her,—these creditors to discharge him from his indebtedness to them and procure a discharge from all his other creditors,—the whole property to be sold by them and the proceeds applied in payment pro rata of all the claims, with a right on his part to purchase any of the claims against him and receive the same dividend on the claims so purchased that would have been paid to the creditors then holding them. Sanford at once made a conveyance of his property, and procured a conveyance by his mother, in accordance with the agreement. The property was sold to the respondent, who was one of the creditors with whom the arrangement was made, and who was to pay therefor the amount of seventy-nine per cent on all the claims, the interest thereon being computed to the 1st of June, 1858, and the same was conveyed to him, and had become vested in him. The mortgaged property taken by itself would however have paid only fifty-seven per cent of the claims secured by it. The respondent had paid the amount of seventy-nine per cent upon all the claims, except upon certain ones which the petitioner had purchased and held at the time the present suit was brought. These were a part of the claims secured by the mortgage. As to these claims it was found by the court that Sanford had procured one Hull to purchase them, using his own money for the purpose, and taking an assignment of them, under an agreement that he should hold the claims until Sanford should pay him the money advanced by him, and his traveling expenses in purchasing them; and that Sanford afterwards procured his mother, the petitioner, to give her note to Hull for the amount, and take an assignment of the claims from him to herself, she holding them in the same manner that Hull had done. It was not intended by this arrangement to extinguish the claims.

The creditors who sold the property and whose duty it was to pay the money, tendered to Hull, while he held the claims, $682 as his dividend under the arrangement; but he refused

to take it, as there was a dispute about the right of the creditors to make a certain deduction from the amount of his claims. The tender was expressed to be made in full for the dividend, and the court found that the amount tendered was all that Hull had a right to claim at the time of the tender, under the arrangement; that the person tendering the same did not intend that Hull should have the amount unless he should take it in full of the dividend; that the amount tendered was deposited in a bank, and some time after the assignment of the claims to the petitioner, was demanded of the creditors who sold the property by the petitioner, and they replied that it should be paid in a few days; and the court found that upon these facts there was no valid tender of the amount of the dividend.

On the trial the respondent objected to the admission of the mortgage deed in evidence, on the ground that it had not been properly acknowledged as a deed and therefore was not a valid mortgage. The certificate of acknowledgment was in the following form :—

Fairfield County ss. Weston, January 1, 1858.

" Personally appeared                signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed. Before me, O. C. Sanford, Notary Public."

The court overruled the objection and admitted the deed.

Upon the facts of the case the court decreed that the respondent should pay to the petitioner the amount of fifty-seven per cent upon the claims held by her and secured by the mortgage, with interest included upon the whole amount of the claims to the first day of June 1858, together with interest upon the fifty-seven per cent of this amount from that date to the date of the decree, the whole amounting to $571.38, and on his failure to pay such sum within the time limited by the decree, with interest thereon to the time of payment, that he should be foreclosed of all right to redeem such an undivided proportion of the mortgaged premises as the sum of $472.06, (the 57 per cent without interest added,) bore to the amount of fifty-seven per cent on all the claims secured by the mortgage.

The respondent moved for a new trial on the ground of error in the admission of the mortgage deed, and filed a motion in error, alleging error in the decree. The particular errors assigned appear sufficiently in the opinion.

*Hawley*, for the plaintiff in error.

*Beardsley* and *Taylor*, for the defendant in error.

BUTLER, J. We can not advise a new trial in this case. The statute requires that every deed of houses and lands shall be acknowledged by the grantor to be his free act and deed before one of certain specified officers, and the construction given it by this court requires that the officer should make a certificate in writing on the deed, to be recorded with it, that such acknowledgment has been made before him. No particular form of certificate is necessary. It is sufficient if the fair import of it is that the grantor appeared in person before the officer and acknowledged that the instrument was his free act and deed. A concise and perfect form has long been in general use. Omissions in that form have brought questions respecting the sufficiency of the certificate several times before this court.

Thus, in *Stanton* v. *Button*, (2 Conn., 527,) there was an omission of the word "acknowledged," and the court properly held that the certificate did not import that the grantor had acknowledged the deed, and that it was fatally defective. In *Hayden* v. *Wescott*, (11 Conn., 129,) the name of the person who appeared was omitted, and the certificate varied somewhat from the usual form. There the words were, "Personally appeared          and acknowledged this instrument by him sealed and subscribed to be his free act and deed." A majority of the court were of opinion that the certificate did not fairly import that the grantor appeared, for that, although the words "by him sealed and subscribed" referred to the grantor, they did not, with certainty to a common intent, refer to the person who appeared to make the acknowledgment. In this case the language is "Personally appeared          signer and sealer of the foregoing instru-

ment," &c.   If it was " Personally appeared          grantor in the foregoing instrument," it would clearly be sufficient.   But the grantor signs and seals an instrument, and the witnesses " subscribe " or " attest" it.   The words " signer and sealer " therefore, used in the same connection, fairly import that the " grantor" appeared and made the acknowledgment.

It is claimed  that the certificate should show that the person who acknowledged was the veritable grantor, *known to the magistrate as such*.   A certificate expressly asserting actual knowledge of the identity of the person by the officer is required in some states, but never has been in this, the ordinary presumption that the magistrate had acted rightly having been deemed sufficient.   And in this case, if the name of the grantor had been inserted in the blank, the certificate would not for that reason show that the *veritable grantor* appeared and acknowledged the deed, without the aid of that presumption, for there may be many of the same name, or the name may have been inserted by the draftsman and not by the magistrate, and the deed carried and acknowledged before him by another person of the same name.   It is not, indeed, in any case the mere presence of the name of the grantor in the blank of the common certificate which furnishes satisfactory evidence that the grantor acknowledged the deed, but the addition of the words " signer and sealer of the foregoing instrument," which distinguish him from those of the same name, in conjunction with the presumption that the magistrate was acting rightly, and certifying only to that of which he had actual knowledge.

In this case, moreover, the magistrate was a subscribing witness, and must have known who did sign and seal the deed, and therefore who the grantor in fact was ; and when he certifies that the " signer and sealer " acknowledged the deed, it does appear from the deed and certificate together that the magistrate had *actual knowledge* that it was the veritable grantor who appeared and acknowledged the instrument.   .

Nor do we perceive that there is error in the decree of the court.

1. It is well settled that a tender must be unconditional and unqualified, and if there is either an express or implied demand of a receipt, or that the money shall be received in full, it will vitiate the tender. 1 Swift's Dig., (Rev. ed.,) 290. The court found the tender to be conditional, " expressed to be made in full," and properly held it invalid.

2. There was no error in the allowance of interest. The court found the amount due, principal and interest, at the date of the decree, and decreed the payment of that sum, with interest thereafter till paid. In including interest up to June 1, 1858, and allowing interest on fifty-seven per cent of that amount, the court was only carrying out the arrangement of the parties.

3. Several specifications of error are assigned under the third assignment of errors, but they are not manifest.

First, it is claimed that inasmuch as the petitioner and respondent are joint mortgagees, the one can not foreclose the other. But the respondent has the equity of redemption also, and as to the proportionate interest of the petitioner in the premises the equity has not merged. It is undoubtedly true that one of two joint mortgagees can not bring a bill of foreclosure without making the other joint mortgagee a party before the court, as petitioner if he consents to join, or as respondent if he declines. Here the respondent was properly made such, not only because he was a declining joint mortgagee, but because he also held the equity sought to be foreclosed, and could not as to that be both petitioner and respondent.

And a joint mortgagee can not be divested of his right of foreclosure of the equity of redemption by any action of his co-mortgagee. We are satisfied that in form the proceeding is a proper one.

And so we think it is in substance also. The notes holden by the petitioner were secured by the mortgage anterior to the " arrangement " between Sanford and the respondent and other creditors, and the rights of the holder had attached; and they afterwards passed to Hull, and from Hull to the petitioner, with the legal title to the notes. To the " arrangement " the holders of these notes were not parties. That

" arrangement " contemplated a purchase of the notes by some of the parties to it, in order that they might be cancelled by a pro rata payment. The " arrangement " therefore did not discharge the lien, by estopping the holders of these notes. Hull was not a party to the " arrangement," but purchased at the request of W. O. Sanford, and held, not in trust for him, but as owner under another agreement to transfer to Sanford when reimbursed his advances, or give them up to be cancelled on payment of a dividend. That understanding between Hull and Sanford could not discharge the lien until executed. The petitioner was not in any just sense a party to the arrangement, and under a similar understanding with Sanford purchased of Hull. But Sanford was not to have any interest in the notes, which could affect the lien which had attached in favor of the owner, until he paid for them. If the petitioner had agreed with Sanford to lend him the money, or in any form that Sanford should become her debtor for the amount, and she should hold the notes as his, under cover or for security, his ownership of the notes would have destroyed the lien, because he was a party to the " arrangement " under which the mortgaged property was sold to the respondent, and he would have been estopped, if his purchase would not have discharged the debt and lien. But no such state of things is found. It is found that she held as purchaser and owner, subject only to an agreement by which they were to be cancelled on payment of the seventy-nine per cent dividend, and if such payment had been made, or lawfully tendered, they would have been cancelled. In the absence of such payment, or a lawful tender, and of any actual payment or other equivalent agreement between W. O. Sanford and herself which would legally or equitably vest them in him, or constitute a payment by him, her right to avail herself of the mortgage security remained intact.

There is no difficulty or hardship in respect to the balance which can affect the equities between these parties. These notes were outstanding in the hands of third persons, not parties to the arrangement between W. O. Sanford and a part of his creditors. By a distinct and auxiliary agreement between

W. O. Sanford and Hull, they were purchased by Hull to be holden subject to be transferred to W. O. Sanford when he should pay for them, or to be cancelled by a dividend, if such dividend should be paid.  They passed into the hands of the petitioner under a similar auxiliary conditional arrangement, and by virtue of that, and the arrangement to which the respondent was a party, the payment of a dividend or a tender of it would have cancelled them.  The respondent was bound to make that payment, but failed to pay or tender.  We see no hardship or difficulty in the case; but if there be any it results from his own laches in not making a lawful tender.

There is no error, and the judgment of the superior court must be affirmed.

In this opinion the other judges concurred.