MARY M. SUMMER, APPELLANT, VS. REUBEN S. MITCHELL APPELLEE.

1. In 1865 the laws of this State did not authorize the admission to record of a deed acknowledged out of this State, but in another State of the United States, before a clerk or deputy clerk of any court, or before a judge of any court not a court of record and having a seal and clerk or prothonotary.

2. A Legislature has power, in the absence of any inhibiting constitutional limitation, and except as against prior vested rights, to cure by retroactive legislation defective acknowledgments of deeds in all cases where the purpose of the acknowledgment is the admission of the instrument acknowledged to record, or its use in evidence.

3. An effect of the "Act providing for the acknowledgment of deeds and other conveyances," approved February 24th, 1873, (sections 16–19, pp. 218, 219, McClellan's Digest,) is to authorize the acknowledgment of the execution of a deed for the record here, to be taken out of this State and according to the laws of the State where it may be taken, at least if the execution of the deed, as distinguished from its acknowledgment is, as in the case at bar, in compliance with the laws both of Florida and of the State of its execution and acknowledgment.

4. The fourth section of the act of February 25th, 1872, (section 19, page 219, McClellan's Digest,) which provides that any deed of conveyance heretofore executed and acknowledged in compliance with the previous provisions of the act should have the same force and effect and be as valid as if the same had been executed after its passage, was to validate, at least from the approval of such act, any prior acknowledgment made out of this State of a deed conveying lands located here, if the acknowledgment conformed to its provisions, and certainly where, as in the case at bar. the execution of the deed, as distinguished from its acknowledgment, conformed both to the law of this State and that of the State of its execution and acknowledgment.

5. It is the established policy of the law to uphold certificates of acknowledgment of deeds, and wherever substance is found obvious, clerical errors and all technical omissions will be disregarded. Inartificialness in their execution will not be permitted to defeat them, if looking at them as a whole, either alone, or in connection with the deed, we find that they reasonably and fairly indicate a compliance with the law. Clerical errors will not be permitted to defeat acknowledgments, when they, considered either alone or in connection with the instrument acknowledged, and viewed in the light of the statute controlling them, fairly show a substantial compliance with the statute.

6. The instrument acknowledged may be resorted to for support to the acknowledgment, and where the same name appears as a witness to the execution of the deed and to the certificate of

Mary M. Summer v. Reuben S. Mitchell.—Syllabus.

acknowledgment as the officer taking it, it may be presumed in support of the certificate that these names represent the same person.

7. Where the title of an officer taking an acknowledgment of a deed is written out in full in the body of the certificate, its omission from the signature is immaterial, and affixing it the signature is itself sufficient. Initials may, however, be used and are sufficient to designate such title.

8. The certificate of acknowledgment, either of itself or aided by the instrument, must show that the officer taking the acknowledgment is one authorized by law to do so, but initials are suffi- to show this, and if they, viewed in connection with the statute, reasonably indicate an officer designated by it as competent to take the acknowledgment, the certificate should be sustained.

9. Where the title of office stated in the body of the certificate of acknowledgment is one which the law did not authorize to take the acknowledgment, and the suffix to the signature, read in connection with the deed, if not alone, indicates an .office having such authority, the suffix will control.

10. A deputy may take an acknowledgment of a deed in his own name.

11. Where an instrument has been acknowledged in another State before a deputy clerk of a court, signing himself as such, and affixing the seal of office, it will be presumed, in support of the certificate, that the clerk had authority to appoint a deputy.

12. The ordinary provisions of recording statutes do not contemplate that recording officers shall record official seals of public officers, and hence where the acknowledgment of a deed, as recorded, indicates by its language that the official seal of the officer taking it was affixed to such acknowledgment, the absence of the seal or of anything representing it from the record, or from a transcript thereof, is not sufficient to overcome the presumption created by such language, that the officer's official seal was affixed to the original.

13. The act of February 24, 1873 (pp. 218–19, McClellan's Digest), in

Mary M. Summer v. Reuben S. Mitchell.—Syllabus.

relation to the acknowledgment of deeds, does not require
other evidence of the official character of an officer taking an
acknowledgment when he affixes his official seal to such ac-
knowledgment.

14. If it does not appear that the introduction of a certified copy of
the record of a deed was objected to in the trial court on the
ground that it was not shown that the original was not within
the custody or control of the party offering the copy, the appel-
late court will conclude that this requirement of the Constitu-
tion, Section 23, Art. XVI, was complied with or waived.

15. The effect of the act of February 24, 1873, in relation to the ac-
knowledgment of deeds is to validate, at least from the ap-
proval of such act, a record made prior thereto of any deed
cured thereby.

16. In 1863 the laws of Georgia authorized the conveyance there of
land located there by a writing signed by the maker and at-
tested by two witnesses, and the record of the deed there upon
an acknowledgment made there before a Clerk of the Superior
Court or a justice of the peace, but unlike our statute as to the
acknowldgment of deeds out of the State, did not require the cer-
tificate of acknowledgment to state that the officer taking it
knew, or had satisfactory proof, that the person making it was
the individual described in and who executed the deed. A
deed purported to have been signed, sealed and delivered in
Thomas county, Georgia, by H. L. H. and M. E. H., his wife,
in the presence of two witnesses, one of whom signed his name:
"T. C. Bracewell, J. P.," and the certificate of acknowledg-
ment represented that it was acknowledged in the same county
by H. L. H. and M. E. H. before, (according to the body of the
certificate,) "the undersigned deputy clerk of circuit court" of
the county, the conclusion of the certificate being: "In wit-
ness whereof I herewith set my hand and seal of office the day
and year above mentioned.  T. C. Bracewell, deputy clerk S.
& J. C." Held, that the acknowledgment, whether deemed, as
might be, to have been made before a deputy clerk of the su-
perior court, or a justice of the peace, was in accordance with
the law of Georgia, and validated by the Florida act of Feb-

Mary M. Summer v. Reuben S. Mitchell.—Statement of Case.

ruary 24, 1873, as was the record made of the deed here in 1863 on such acknowledgment, and that a transcript of the record is admissible in evidence under Section 21, Art. XVI Constitution of 1885, though no representation of the seal of the officer taking the acknowledgment appeared on such record or transcript.

17. The statutes of another State of the Union must be proved by being introduced as evidence; our courts do not take judicial notice of them.

Appeal from the Circuit Court for Marion county.

### STATEMENT.

The action is ejectment for the recovery of an undivided half of lot 2, block 35, old survey of Ocala, and *mesne profits*, and was commenced in June, 1887, by the plaintiff, then a minor, through her next friend, she being the only surviving child of Adam G. Summer, who died in the spring or summer of 1866. To further sustain her action she put in evidence a certified copy of the record of a deed in the office of the Clerk of the Circuit Court of Marion county, such deed bearing date September 1, 1858, and purporting to have been made by Martha Baker, Robert Bullock and Amanda Bullock, his wife, and to convey to H. L. Hart in fee the lot in question. She also offered in evidence a certified copy of the record in Marion county clerk's office of a deed bearing date July 9, 1863, and purporting to have been executed in Thomas county, State of Georgia, to be a conveyance in fee of the same property by Hart and wife to Adam G. Summer and

Henry Smith, but its admission in evidence having been objected to by defendant on the ground, that the deed "had not been duly proven and acknowledged and recorded as required by law," the objection was sustained, the plaintiff excepting to the ruling and having in support of the admissibility of the deed, read in evidence, Sections 2690, 2705, 2706, 2707, of the Code of the State of Georgia, second edition of date 1873, revised, corrected and annotated by David Irwin, Geo. N. Lester and W. B. Hill.

Plaintiff then offered as a witness Robert Bullock, who testified that he was in possession of the lot in 1854, claiming title, had the lot under fence, built a livery stable and operated and ran it, dug a well on the southwest corner of the lot, and so remained in possession until sometime in 1858 when he sold it to H. L. Hart and placed him in possession thereof; that Hart continued in the same business on said lot, running a livery stable for a number of years thereafter. The following questions were asked the witness by plaintiff, and each of them was objected to and the objection sustained, the plaintiff excepting to the rulings :

1. How long did H. L. Hart remain in actual possession of said lot after you put him in possession thereof, and state whether or not he was in possession claiming title exclusive of any other right?

2. Were you in possession of said lot at that time claiming title thereto exclusive of any other right ?

3. State the character of the possession of H. L. Hart? This question being preceded by an offer to prove by the witness the character of Hart's possession, and being asked for such purpose.

4. Who was in possession of said lot immediately after H. L. Hart? This question being preceded by an offer to prove that Hart placed Summer in possession when he sold to him, and being asked for that purpose.

The plaintiff also introduced as a witness W. P. Trantham, who testified that he was acquainted with the premises in controversy and knew Adam G. Summer, and then plaintiff asked him the following questions, each of which was ruled out on objection of defendant, and the ruling excepted to by plaintiff:

1. State how long Adam G. Summer was in possession of said lot, and what was the character of the possession?

2. Was Adam G. Summer, prior to his death in 1866, in actual possession of said lot?

The plaintiff here offered to prove by the witness, Robert Bullock, that the possession of Bullock, Hart and Summer followed in immediate succession, and was turned over from one to the other and was continuous and adverse from 1854 to Summer's death in 1866, each claiming title from the other in the order of succession, and for this purpose asked him the follow-

ing question : State whether or not the possession of said lot by Robert Bullock, H. L. Hart and Adam G. Summer from 1854 to 1866 immediately succeeded each other, and each claiming title from the other ? The question was excluded on objection by defendant, and plaintiff excepted.

The plaintiff having rested, the defendant put in evidence a deed of conveyance in fee of the above property, dated May 1st, 1886, from William E. Schoeflin and wife to H. E. Miller and Edwin Spencer.

Schoeflin, a witness for defendant, testified that he took possession of the lot in 1878 ; that he built a new fence around it, and built a house on it and lived in it with his family until he sold it to Miller and Spencer ; that it is the same house Mr. Hicks now lives in. On cross-examination, he said that he built a new fence, and did not repair an old one ; took away some old pieces of boards and built a new fence ; the house he built is the same one Hicks now lives in, the same house that Wallace Dawkins put there, and witness put a new story on and fixed it up the same as building a new one. The house that Mr. Hicks lives in is on lot 26, west of this one, but I had "all fenced up—both lots ;" the house was partly in the street that runs between the two lots. At this time that street was not opened. "I told you that the house I built and lived in is the same one in which Mr. Hicks now lives, and had the whole thing under fence."

Defendant then introduced a deed from Miller and Spencer to the defendant bearing date December 7th, 1886, and purporting to convey to Mitchell and his heirs the lot in question.

The defendant having rested, the plaintiff introduced one Wallace Dawkins, who testified, that he lives in Ocala, and has seen the lot every day for the last twelve years; that he took possession of the lot in 1877, and put a fence around it; that he took possession by mistake, intending to locate on another lot, and got on this one by mistake. (Witness locates the lot on a map of Ocala handed to him.) That when he found out his mistake he moved off; that he built a house on the lot across the street from this one on the west; that he built it; that Schoeflin moved in the same house; moved in the same day, witness thinks, that witness moved out of the house; that the fence witness put around it was the same one that was there when Schoeflin went there. When witness went there no fence was around the lot, and no houses; that no house was ever built on the lot since witness knew it until after the big fire in 1884, when old man John Elzia put up his little stand in December, 1884. It is the same place he now uses.

Mrs. Margaret Summer, mother of plaintiff, testified that her husband, Adam G. Summer, was seized and possessed of the lot; that it has been vacant for a number of years; not occupied until defendant took possession of it something over a year ago; does not know

of plaintiff's possession within seven years; that Mr. Summer was engaged in some business upon the lot, but she does not know what the business was.

Plaintiff testified she had never had possession since her father's death.

The other facts are stated in the opinion.

*Fleming & Daniel, Bullock* and *Burford* and *R. L. Anderson* for Appellant.

Defendants object to the introduction in evidence of a certified copy of the deed of Hubbard L. Hart and wife to A. G. Summer and Henry Smith because the same has not been "duly recorded according to law," as provided by Article 16, section 16, Constitution of Florida of 1885, and rely upon the law found in Thomson's Digest, pages 180, 181 and 182, and say :

1st. It does not appear that the parties were known to the officer taking the acknowledgment.

2nd. That a deputy clerk cannot take an acknowledgment.

3d. It does not appear that the officer acted within his jurisdiction.

4th. It was taken before an officer who had no authority to take acknowledgmnt of deeds in this State.

The fourth objection is the only one we think of importance.

As to the first objection we cite Devlin on Deeds, secs. 478 and 479.

As to the second objection we cite sec. 486.

The fourth objection we will hereafter consider.

Under the act of 1873, approved Feb. 24th, being Chapter 1839, Laws of Florida, the deed should have been introduced. Section 1 provides : "And if any such deed or conveyance of land should be executed in any other State * * * of the United States such deed may be executed according to the laws of such State." * * * * Section 4 of said act provides : "Any deed or conveyance heretofore executed and acknowledged in compliance with the provisions of this act shall have the same force and effect and be as valid as if the same had been executed after the passage of this act."

This deed having been executed in one of the other States (Ga.) of the United States and if executed according to the laws of said State then it should have been admitted. Code of Georgia, 1873, sec. 2706, provides for execution of deeds in the State : "If executed in the State it must be *attested* by a judge of a court of record in the State, or a justice of the peace, or a notary public, or a clerk of a superior court in the county in which the three last mentioned officers respectively hold their appointment." The same section provides that it may be *acknowledged* in the presence of either the above named officers. Section 2706 of said code is for "*the attestation of deeds*," and when attested according to the provisions of this section no other proof,

or acknowledgment, or probate is necessary to entitle it to record. The next section of said code, 2707, provides another mode of proving a deed executed in that State *"Probate by Witnesses."* This deed was then executed. It was attested in the presence of one of the officers mentioned in section 2706 of said code, to wit: "T. C. Bracewell, J. P."

Appellees say who and what is J. P.? It is Justice of the Peace and as sufficient as if he had written it in full, "Justice of the Peace." Doublin on Deeds, sec. 501.

It should have been introduced for another reason. It was *acknowledged* by the parties executing it before "the Clerk of the Superior Court in the county in which he held his appointment." The acknowledgment desscribes the officer taking it as "Deputy Clerk of the Circuit Court" in and for the county and state aforesaid. (The county and state having been previously set out) and concluding:

"In witness whereof I herewith set my hand and seal of office the day and year above written," and signs                    S. C. BRACEWELL,

"Deputy Clerk S. and J. C."

What does the words "Deputy Clerk S. and J. C." mean? It is evident it means Deputy Clerk Superior Court and Justice of the Peace."

We find this same man as one of the subscribing witnesses to the deed and adding his official capacity of "J. P." to his signature. In addition to this "attesta-

tion" there is an acknowledgment before a clerk of a court of record as provided by section 1, Chapter 1939, Laws of Florida.

Appellees say there is no such court known to the laws of Georgia as "Circuit Court." The attesting clause of the acknowledgment uses the words "my hand and seal of office," and only courts of record have *clerk* and *seal* of *office*. And this deed was executed in Georgia for lands in Florida. It is more than probable that the deed was drawn in Florida and sent to Georgia and in taking the acknowledgment the deputy clerk, unacquainted with the law of conveyancing does not erase any portion of the deed that was written and undertook to make it conform to both the laws of Florida and Georgia, or possibly inadvertently allowed the words to remain. "Devlin on Deeds," sec. 464, and note 1, Harrington vs. Fish, 10 Mich., 415, 421.

We are of the opinion that the foregoing statements sufficiently meets the fourth ground of objection.

A clearly substantial compliance with the statute providing for the acknowledgment of deeds is sufficient. Black & Worting vs. Sebastian, Adm. Central Reporter, February 2, 1888; Carpenter vs. Dexter, 8 Wall, (U. S.) 426; Law Ed., 529; Kelly vs. Calhoun, 95 (U. S.), 713, Law Ed.; Dewey vs. Cray, 5 Wall, (U. S.), 595, Law Ed., 653; Dundas vs. Hitchcock, 12 How., (U. S.), 269, Law Ed., 983.

The other assignment of errors are to the same ef-

fect, and the consideration of one will be sufficient for all.

Possession of property alone is evidence of ownership, but is of the lowest species, especially if unaccompanied with a claim of ownership.

Prior possession is sufficient evidence to recover against a trespasser or intruder. Sedgwick & Waite on Trial of Title to Land, secs. 717 and 718; Ashmead *et al.* vs. Wilson, Executrix, 22 Fla., 255; Seymour & Sampson vs. Creswell, 18Fla., page 29.

Mrs. Margaret J. Summers, a witness for plaintiff, testifies "at the time of the death of Mr. Adam G. Summer, he was seized and possessed of said lot. * * * Mr. A. S. Summer was engaged in some business upon the lot, but I do not know what the business was. (See answer to interrogatory, No. 3, page 567.) Robert Bullock testifies that he took possession of said lot in 1854, *as owner*, built a stable, dug a well, etc., sold and delivered the possession to H. L. Hart, who continued the same business for several years.

It is eminently proper that we should have been allowed to prove the actual possession by H. L. Hart, of the lot and the character of this possession, whether he claimed title or not. Was he a trespasser or not? How can you tell if these questions are excluded? Sedgwick & Waite on Trial of Title to Land, sec. 719."

Was Adam G. Summer there as a trespasser ? W. P. Trantham was called to explain, but the question of the same purport as the one propounded to witness, Robert Bullock, was ruled out. Pages 28 and 29.

A plaintiff in ejectment can recover on proof of prior possession against one found in possession of the land without title. Ashmead *et al.* vs. Wilson Executrix, 22 Fla., 355; Summons vs. Spratt, 20 Fla., 495; Sedwick & Waite on Trial of Title to Land, sec. 718.

The evidence showed that Summer died in possession in 1866. (Cross interrogatory No. 3, of Margaret J. Summer, page 5, 6, 7.) No other possession shown until about 1877, when W. D. Dawkins took possession by mistake. Pages 42 and 43.

Schoefflin then moved into the same house that Dawkins built on another lot across the street. Schoefllin enclosed the lot in controversy, and the one he lived on under one enclosure, but how long he remained, there or by what authority is not even attempted to be shown. We presume by permission of the owner of the lot on which the house stood and where Hicks is now living. Then Schoefflin with no other authority conveys to Miller & Spencer, who never took possession, but in a few days convey to defendant and put him in possession.

Can a trespasser enter upon the land of an-

other, convey to another, and then say to the owner my deed is from one in possession at the time of conveyance, and you must prove your proper title, and you will not be allowed to show prior possession in order to recover!

Possession of defendant cannot strengthen his deed as plaintiff was a minor until July 8, 1887.

No appearance for Appellee.

RANEY, C. J.:

Appellant sued appellee in enjectment, and the result was a judgment in favor of defendant.

The first error assigned is the refusal of the judge to admit in evidence a certified copy of the record of a deed of the land in controversy, a lot in Ocala, from Hubbard L. Hart and Mary Elizabeth Hart, his wife, to A. G. Summer and Henry Smith. The deed purports to have been executed for and in consideration of six hundred dollars, in Thomas county, State of Georgia, July 9th, 1863. Its conclusion is as follows:

In testimony whereof, we, the said party of the first part, have hereunto set our hands and seals this the day and year first above written.

HUBBARD L. HART, [SEAL.]

M. E. HART. [SEAL.]

Signed, sealed and delivered in presence:

JACOB KUBITSKIK,

T. C. BRACEWELL, J. P.

Mary M. Summer v. Rueben S. Mitchell.—Opinion of Court.

The certificate of the acknowledgment made by the grantors of the execution of this deed is as follows :

STATE OF GEORGIA, }

Thomas County. }

Be it remembered that on this 22nd day of July, A. D., 1863, personally came before me, the undersigned deputy Clerk of the Circuit Court in and for the county and State aforesaid, Hubbard L. Hart and Mary Elizabeth Hart, who respectively acknowledged each for himself and herself, and the said Mary Elizabeth Hart being absent from her husband, the said Hubbard L. Hart, acknowledged voluntarily, without fear or compulsion of or from her said husband, that they signed, sealed and delivered the foregoing instrument for the purposes therein mentioned. In witness whereof I herewith set my hand and seal of office the day and year above mentioned.

T. C. BRACEWELL,<br>Deputy Clerk S. & J. C.

The deed thus executed and acknowledged was admitted to record in the office of the Clerk of the Circuit Court of Marion county on the 30th day of July, 1863, by the clerk of that court. His certificate of the record need not be set out. A copy of this record duly certified March 19th, 1888, by the then clerk, being offered in evidence was objected to by defendant on the general ground that the deed had not been duly proven, acknowledged and recorded as

required by law, and the objection having been sustained, the ruling was excepted to.

The particulars wherein the acknowledgment, or the copy of the record, was objected to as being deficient, are not stated in the bill of exceptions; still whatever objection might have been taken here to the generality of the objection below had been waived by the specifications of the particular grounds of objection in the brief of counsel for appellant, upon whose behalf alone the cause has been argued before us. Carpenter vs. Dexter, 8 Wall., 524.

These grounds· of objection are: 1st. That it does not appear that the parties making the acknowledgment were known to the officer taking the acknowledgment. 2d. A deputy cannot take an acknowledgment. 3d. It does not appear that the officer acted within his jurisdiction. 4th. The acknowledgment was taken before an officer who had no authority to take acknowledgment of deeds in this State.

At the time of the execution and acknowledgment of the deed in question, viz: July, 1863, the statute regulating the acknowledgment or proof, made out of the State, of deeds conveying any interest in real estate within the State, for the purpose of being used or of entitling such deeds to be recorded here, was that of February 3rd, 1834, entitled "an act concerning the authentication of conveyances," as amended by act of February 27th, 1340. The first section of the act of 1834, provided that the deed should be acknowledged by the party or parties executing the same, or that

the execution thereof by such party or parties should be proved by a subscribing witness thereto, "before the officers hereinafter named, and in the manner and form hereinafter mentioned;" and its second section enacted that no acknowledgment or proof of any such deed "executed or acknowledged out of the State should be taken by an officer or officers aforesaid, unless the officer taking the same shall know or have satisfactory proof that the person making such acknowledgment is the individual described in and who executed the deed or instrument under seal." Its third section provides, "in addition to the requisites contained in the preceding sections," for the privy examination of married women (residing out of the territory) executing such an instrument; and the fourth section made provisions as to the acknowledgments made out of the territory, but within the United States, and was supplanted and expressly repealed by the above mentioned act of 1840. This statute, entitled, "An act in amendment of" the former act, enacted that all such instruments acknowledged out of the territory, but within the United States or its territories, with the intent to be used or recorded here, should be acknowledged or proved before one of the commissioners appointed under the act of January 24th, 1831, and in those cities or counties wherein no commissioner "is or shall be appointed under said law, or in case of his sickness, death, or inability to perform the duties of his office where he may have been appointed," that such acknowledgment and proof might be taken before the

chief-justice, judge, presiding justice, or president of any court of record of the United States, or of any state or territory thereof having a seal and a clerk or prothonotary; but that no proof of acknowledgment taken by any such chief-justice, judge, presiding justice or president, should entitle such instrument to be recorded, unless taken within some place or district to which the jurisdiction of the court to which he belongs should extend; and that the place of taking such acknowledgment should be set forth in the certificate, and also that the court of which he was such officer was a court of record, and that such certificate of acknowledgment should be accompanied by a certificate of the clerk or prothonotary of the court, under its seal, to the effect that the former officer was duly appointed or authorized as such judge, justice or president. The fifth section of the act of 1834 relates to acknowledgments or proofs taken out of the United States, but in North or South America, or in Europe; and the sixth, or remaining section is: That the certificate of such acknowledgment as aforesaid by the officer before whom the same shall be taken shall contain and set forth substantially the matter required to be done or proved to make such acknowldgment effectual by this act.

The above legislation is to be found in Thompson's Digest, pp. 181–2, and McClellan's Digest, pp. 216–17, the word State being properly substituted for that of territory, when applicable to Florida.

Thus the law as to such acknowledgment or proof

stood in 1873, and, we may further observe, that up to this time acknowledgments or proof made in the State had to be made before the officer authorized by law to record the instrument, or before some judicial officer, (act of November 15th, 1828, McClellan's Digest, sec. 6, p. 215) or before a Notary Public (act of February 8th, 1861, McClellan's Digest, sec. 3, p. 792).

It is entirely clear that there was in 1863 no law in this State authorizing the admission to record of a deed acknowledged out of the State, and in another State of the United States, before a deputy clerk or the clerk of any court, nor before even a judge of any such court not a court of record and having a seal and clerk or prothonotary; and unless legislation, subsequent to that in force at the time this record was made, had legalized the record, there was no error in the ruling of the judge excluding the transcript as evidence under section 21 of Article XVI of the Constitution, which section is as follows: "Deeds and mortgages which have been proved for record and recorded according to law, shall be taken as *prima facie* evidence in the courts of this State without requiring proof of the execution. A certified copy of the record of any deed or mortgage that has been or shall be duly recorded according to law shall be admitted as *prima facie* evidence thereof, and of its due execution with like effect as the original duly proved; *Provided*, It be made to appear that the original is not within the custody or control of the party offering such copy."

There was approved by the Governor on the 24th day of February, 1873, a statute entitled "An act providing for the acknowledgment of deeds and other conveyances," whose first section, after providing that deeds, executed in this State, of any interest in lands herein, shall be executed in the presence of two witnesses who shall subscribe their names as such, and that the persons executing such deeds may acknowledge the execution thereof before any Judge, Clerk of the Circuit Court, Notary Public or Justice of the Peace within the State, enacts that if any such deed or conveyance of land shall be executed in any other State, territory or district of the United States, such deed may be executed according to the laws of such State, territory or district, and the execution thereof may be acknowledged before any judge or clerk of a court of record, Notary Public, Justice of the Peace or other officer authorized by the laws of such State, territory or district to take the acknowledgment of deeds therein, or before any commissioner appointed by the Governor of this State for such purpose. Its second section provides that if such deed be executed in *a foreign country*, it may be executed according to the laws of such country, and that any execution thereof may be acknowledged before certain officers designated therein, they being some of those designated in the fifth section of the act of 1834, and others besides. The third section is to the effect that if any such deed or other conveyance shall be executed and acknowledged in

any other State or country before any officer not having an official seal, he shall have attached thereto a certificate of the clerk, or other proper certifying officer of a court of record, or certificate of the Secretary of State, Minister Extraordinary, Minister Resident, Charge des affairs, commissioner or consul, as the case may be, that the person whose name is subscribed to the certificate of acknowledgment was at the date thereof such officer as he is therein represented to be, that he believes the signature of such person subscribed thereto to be genuine, and that the deed is executed and *acknowledged* according to the laws of such State, territory, district or foreign country. The fourth section of this statute is as follows: Any deed or conveyance heretofore executed and acknowledged in compliance with the provisions of this act shall have the same force and effect, and be as valid as if the same had been executed after the passage of this act. The fifth, or remaining, section providing that future conveyances not recorded within six months after their execution shall be void as against subsequent purchasers, was held void on account of not being within the expression of the title of the act, in Carr vs. Thomas, 18 Fla., 736.

A purpose of this act, as applicable to conveyances made in any other State of lands located here, was the adoption of the laws of that State regulating the acknowledgment of conveyances of any interest in real estate located there. This is made entirely clear by

the provision of the third section, which requires that
the certificate therein provided for in cases where the
officer taking the acknowledgment has no official seal,
shall state that the deed "is executed and acknowl-
edged according to the laws of such State, territory,
district or foreign country." This provision implies,
beyond doubt, that wherever an acknowledgment shall
be in accordance with the laws of the State where it
was executed and acknowledged, it will be sufficient,
however wanting it may be in any requisite prescribed
by previous laws of our own State as to acknowledg-
ing deeds executed beyond its limits. It is unneces-
sary to stop to enquire if the second section of the act
of 1834 is repealed; for even if it is not, and a deed
acknowledged in accordance with its provisions, as
amended by the act of 1840, will still be entitled to re-
cord, it is entirely clear that the act of 1873 has es-
tablished at least an additional rule which renders any
acknowledgment made in accordance with the laws of
the State where it is executed sufficient though its cer-
tificate does not state, in compliance with former leg-
islation, that the officer taking the acknowledgment
knew or had satisfactory proof that the person making
it was the individual described in and who executed
the deed. Had the deed in question been executed,
acknowledged and recorded subsequent to the act of
1873, there would certainly have been nothing in the
first objection made to the introduction of the copy of
the record thereof; nor is there anything in this ob-

jection if the fourth section, *supra*, of the act of 1873 is not ineffectual in so far as applicable to the circumstances of the case before us.

The power of a Legislature, in the absence of any inhibiting constitutional limitation, to cure by retroactive legislation defective acknowledgments in all cases where the purpose of the acknowledgment is admission of the instrument acknowledged to record, or its use as evidence, is, except as against prior vested rights, unquestionable. The Legislature, when enacting the statutes of 1834 and 1840, could have dispensed with any requirement as to acknowledgments to be found in them, and this being so, it has the authority, at least in all cases of mere irregularity, or where no vested rights are affected, the power to do the same by subsequent legislation. Cooley's Constitutional Limitations (5th ed.), 458, 471; City of Jacksonville vs. Basnett, 20 Fla., 525; Webb on Record of Title, sec. 97; Gorden vs. Collett, 107 N. C., 362; Barton vs. Morris 15 Ohio 408; Watson vs. Mercer, 8 Peters, 88; Buckley vs. Early, 72 Iowa, 289; Green vs. Abram, 43 Ark., 420; Johnson vs. Richardson, 44 Ark., 365.

The intention of the Legislature in enacting the fourth section of the act of 1873 was at least to render valid any irregularity in the acknowledgment of a deed of conveyance of land which had been previously executed in another State if the execution of the deed and of the acknowledgment were in compliance with the laws of the State where the execution took place.

This intention extended to making the acknowledg
ment as valid at least from the approval of the statute
as if at the time of the execution of the acknowledg-
ment the law of this State had provided that deeds of
conveyance executed according to the law of the State
of its execution might be acknowledged according to
the laws of the State regulating the acknowledgment
there of deeds of lands located here.

Upon the trial of the cause the plaintiff to support
the introduction of the above deed as testimony, read
in evidence sections 2690, 2705, 2706 and 2707 of the
Code of Georgia of 1873.   The substance of these sec-
tions, so far as material here, is as follows:

Sec. 2690.   A deed to lands in Georgia must be in
writing, signed by the maker, attested by at least two
witnesses and delivered to the purchaser or some one
for him, and be made on a valuable or good considera-
tion.

Sec. 2705.   Every deed conveying lands shall be re-
corded in the office of the clerk of the superior court
of the county where the lands lie.

Sec. 2706.   To authorize the record of a deed to
realty, it must, if executed in Georgia, be attested by
a judge of a court of record of that State, or a justice
of the peace, or notary public, or the clerk of the su-
perior court in the county in which the three last men-
tioned officers respectively hold their appointments;
or if subsequent to its execution the deed is acknowl-
edged in the presence of either of the above-named

officers, that fact certified on the deed by such officer shall entitle it to be recorded.

Section 2707 relates to proof by a subscribing witness.

These sections are shown by the code to be legislation of prior date to the execution and acknowledgment of the deed under discussion.

It is apparent from the first of these sections that the deed, considered as separate from the acknowledgment, was executed in accordance with the law of Georgia; and as it was signed, sealed and delivered in the presence of two subscribing witnesses, such execution was also, we may state, in compliance with our own laws in force at that time controlling the mere transfer of the title from Hart, and hence the deed is one which in so far as the conveyance of Hart's fee is concerned, is valid and effectual under the laws of both States.

There was in the Georgia law nothing requiring the certificate to state that the officer taking the acknowledgment knew or had satisfactory proof that a person making an acknowledgment was the individual described in and who executed the deed, and this being so, the first objection made to the acknowledgment and copy of the record offered in evidence fails. Brunswick-Balke Collender Co. vs. Brackett, 37 Minn., 58; Sanford vs. Bulkley, 30 Conn., 344.

The second and fourth objections will be considered together. Reversing the order of their state-

ment, they are in effect, that the acknowledgment was taken before an officer who had no authority to take it, *according to* (such being our understanding of the use made of the word *"in,"* by counsel in stating their fourth objection), the laws of this State, and was moreover taken before a deputy of such officer, and that a deputy could not take such an acknowledgment.

To decide whether the acknowledgment was made before, or taken by, an officer recognized by the act of 1873 as competent to take it, we must first ascertain what officer took it. According to the body of the certificate it was taken before a deputy Clerk of the Circuit Court of Thomas county, Georgia, but when we look at the signature to the certificate we find that he does not sign as acting in that capacity, and moreover we are not informed that there was any "circuit court" in Georgia. Counsel for appellant contends that the words and initials "Deputy Clerk S. & J. C., stand for and mean: Deputy clerk of superior court and justice of peace." To reach this conclusion they invoke the aid of the attestation of the deed, in which it will be found that a person of the same name, "T. C. Bracewell," is one of the attesting witnesses, he affixing to his signature there the initials: J. P. There is no doubt that the instrument acknowledged may be resorted to for support to the acknowledgment. Einstein vs. Shouse, 24 Fla., 490; 5 South Rep., 380; Brunswick-Balke Collender Co. vs. Brackett, 37 Minn., 58; Owen vs. Baker, 101 Mo., 407; Wells vs. Atkinson, 24 Minn., 161; Samuels vs. Shelton,

48 Mo., 444; Sharpe vs. Orme, 61 Ala., 263; Carpenter vs. Dexter, 8 Wall, 513; Luffborough vs. Parker, 12 Serg. & Rawle, 48. In Carpenter vs. Dexter, 8 Wall., 513, the deed purported to have been signed, sealed and delivered in the presence of two witnesses, one of whom signed his name as "H. Wendell, Jr." The certificate of acknowledgment purported to have been taken before and signed by "H. Wendall, Jr., Justice of the Peace," and stated that "the above named Walter T. Davenport, who has signed and sealed and delivered the above instrument of writing, personally appeared before" such undersigned justice of the peace and acknowledged the same, but it omitted to state, in the language of the statute, that the person making the acknowledgment was personally known to the officer to be the person who executed the deed, or had been proved by credible witnesses to be such. The court after observing that "one of the subscribing witnesses was the justice of the peace before whom the acknowledgment was taken," and referring to the above statement of the certificate as following immediately the attestation clause, remarks: "Read thus, with the deed, the certificate amounts to this: That the grantor personally appeared before the officer and in his presence signed, sealed and delivered the instrument, and then acknowledged the same before him. An affirmation in the words of the statute could not more clearly express the indentity of the grantor with the party making the acknowledgment." In Luffborough vs. Parker, 12 Serg. & Rawle, 48, the statute required that deeds should be proved by

a subscribing witness, and A. B. made the proof, which did not state that he was a subscribing witness, yet by reference to the deed, it appears from his name that he was one, and the proof was held sufficient. It is apparent that in the former of these cases the identity of the witness and of the person taking the acknowledgment is presumed from identity of name, and that a similar presumption is made in the second case as to the person subscribing the deed as a witness and the one proving its execution; yet the court does not make this presumption supply of itself in the former case the express statement as to indentity of the grantor and person acknowledging required by the statute to be made. In the other case no corresponding statement as to identity was exacted by the law controlling the certificate of proof of execution. Where a deed is referred to in a certificate in such manner as to connect the former with the latter, or make it substantially a part thereof, as is the case here, and reading them together there can be found a substantial compliance with the demands of the statute, the certificate should be sustained, but we cannot supply the statutory requirement of an express statement of a fact in a certificate by a mere presumption of such fact, and for the reason that the officer's statement, and not the presumption, is the ividence expressly called for by the statute to prove the particular fact. This rule is not violated in either of the above cases, nor by our concluding here, as we do, that the witness and deputy clerk Bracewell were one and the same person, Mott v. Smith, 16 Cal., 534; Hogans v. Carruth, 18.

Fla., 588. This conclusion or presumption does not, however, render the certificate of Bracewell sufficient under the second section of the act of 1834, there being absent from it the substantial affirmative statement as to the identity of parties to be found in Carpenter v. Dexter.

The certificate of itself or aided by the instrument acknowledged, must (unless parol evidence be admission for such purpose—a point not presented—) show the character of the officer taking the acknowledgment, and when we have learned this much, we must ascertain whether he was authorized to take it. The title of the officer may be written out fully in the body of the certificate, and when this is done its omission from the signature is immaterial; Colby v. McOmber, 71 Iowa, 469; Brown v. Farran, 3 Ohio, 140; or it may be affixed to the signature, and if so, this is of itself sufficient. Devlin on Deeds, sec. 501; Russ v. Wingate, 30 Miss., 440. The use of initials generally understood to stand for the title of an office will answer. In Bowley v. Berrian, 12 Ill., 198, where an officer affixed to his signature, "N. P. for the city of Quincy, in Adams county, Illinois," the initials were held to mean Notary Public, and J. P. was decided to signify Justice of the Peace in Shattuck vs. People, 4 Scamnon, 477. In Russ vs. Wingate, 30 Miss., 440, the certificate began: "State of Mississippi, Hancock county," and concluded: Given under my hand and seal this day and year above written. Lewis Y. Fol-

som, J. P. H. C., (seal). There was no other designation of the officer yet it was held to be a sufficient designation of the officer as a justice of the peace. See also Final vs. Backus, 18 Mich., 218; Sparrow vs. Hovey, 41 Mich., 708; State vs. Manley, 1 Tenn., 428; Stinson vs. Russell, 2 Ibid, 40; Mayor vs. State, 2 Sneed, 15; Burton vs. Pettybone, 5 Yerger, 442. In McDonald vs. Morgan, 27 Texas, 503, the affidavit of a subscribing witness to a deed executed in Liberty county, Texas, was made March 13th, 1838, before a person signing himself "George W. Miles R. L. C.," which was followed by a certificate of the record on May 4th, 1838, of the deed "in my office," headed Republic of Texas, Liberty county, and signed as above. A statute in 1841 validated all records of deeds acknowledged before certain officers, among whom was "the Clerk of the County Court, in whose office such record is proposed to be made." The law in force at the time of the record made Clerks of the County Courts recorders for their respective counties, and it was held that the official character of the officer as Clerk of the County Court, and *ex officio* recorder, was sufficiently indicated. As somewhat on the same line is Owen vs. Baker, 101 Mo., 407, where there was a certificate giving at the outset the State and county, and signed: "James C. Jackson, Recorder," and stating in the body that the grantor appeared "in open court" and acknowledged the deed, such certificate being followed by a statement similarly signed twenty

days subsequently, to the effect that the subscriber had duly recorded the instrument. The statutes required the acknowledgment to be made before the Circuit Court of the county wherein the estate was situated, and that the clerk of the court should endorse upon the deed a certificate thereof "under the seal of the court;" and it also made the clerk of the designated court recorder of deeds. "Jackson, who signed the certificate," says the opinion, "was recorder only by virtue of his office as Circuit Clerk. His description of himself, therefore, as recorder indicated likewise that he was Circuit Clerk, and with the recitals in the acknowledgment made it clear that it was taken by him as clerk. As Circuit Clerk, he was authorized to take the acknowledgment, but as recorder he had no such authority. * * * In this case the acts of the sheriff [the grantor] and court, described in the certificate of Jackson, were valid if performed before him as clerk, but not as recorder."

Not only do the courts hold initials sufficient to indicate the character of the officer taking an acknowledgment, but they do not permit clerical errors to defeat or render acknowledgments ineffectual, when they, considered alone, or read in connection with the instrument acknowledged fairly show a substantial compliance with the statute. In Blythe vs. Houstoun, 46 Texas 65, 79, there was offered in evidence a certified copy of the record of a deed which was objected

to on the ground that the certificate of acknowledgment did not show of what county the officer giving the certificate was notary public, nor that he was a notary public when the acknowledgment was taken. The certificate commenced: "The State of Texas, county of Hopkins," and recited the appearance of the parties before the "undersigned authority," and concluded: "Witness my hand and official seal at Douglass, this 6th day of October; A. D. 1854," being signed: "John R. Clute, Notary Public, N. C-" "The objection," says the Supreme Court of Texas, "was, we think, properly overruled. * * * The discrepency between the county named in the outset, and the letters designating his county appended to the signatures, might easily be accounted for, and certainly was not of sufficient importance to invalidate the record." In reaching this conclusion the court remarks that McDonald vs. Morgan, *supra*, "is nearly in point as to the sufficiency of the signature, which, it must be assumed, was authenticated with the official seal of the notary, showing the words, 'Notary Public county of ——, Texas'." Merchants Bank vs. Harrison, 39 Mo., 433, is a case in which the notary public who took the acknowledgment of a deed offered in evidence, described himself in the body of the acknowledgment as a notary public within and for the county of Livingston, but appended to his signature his official character in the following words: "Notary Public Howard county," and the Supreme Court said they were inclined to think that the deed should have been

admitted, but being excluded, there was still evidence
enough to show a *prima facie* right to recover.   In
Agan vs. Shannan, 103 Mo., 661, the certificate of ac-
knowledgment, after stating that W. L. H. Frazier
appeared in the Probate Court, in open court, and ac-
knowledged the deed, concluded, including the signa-
ture, as follows:   "In testimony whereof I, W. L. H.
Frazier, judge of said court, have hereunto set my
hand and affixing my private seal.   *   *   *   M. L.
Wyrick, Probate Judge."   A private seal was affixed,
and there was also a statement that no seal of office
had yet been provided.  It was held, overruling Lin-
coln vs. Thompson, 75, Mo., 623, that the certificate
was good.

Viewing the certificate of acknowledgment in the
light of the Georgia law it must be held sufficient if we
can learn from the certificate, either alone or aided by
the instrment acknowledged, that the acknowledgment
was made before or taken by any officer authorized by
such law to do so.   From the Georgia law, as proved,
it appears that among other officers, either a clerk of a
Superior Court or a Justice of the Peace could take in
that State an acknowledgment of a conveyance of land
situate therein; and hence if the description following
and constituting a part of the signature, fairly indi-
cates either of these officers, the acknowledgment
must be sustained.   Invoking, as we lawfully may and
properly should do, the aid of the attestation of the
deed, our conclusion is, that each of the above official
capacities is sufficiently indicated.   The final "C" may

in the light of the authorities be regarded as a clerical error, and intended for a P, and so treating it, the quotation would read: "Deputy Clerk of the Superior, and Justice of the Peace." The omission of the word "court," or the letter "C," as standing for "court," after the letter "S," cannot be regarded as material, but its absence, in view of the liberal principles of law always obtaining and to be applied in support of these instruments, will be supplied. The letter "S" can, in view of the Georgia law, be given no other signification than as standing for "Superior," and informed as we are by this law that a clerk of the Superior Court may perform the official functions in question, we must elect between ignoring the clear indication of the words "Deputy Clerk Superior," and defeating the acknowledgment, or of regarding them in the light of the statute and supplying the word "court" as a clerical omission and sustaining the certificate. Instruments like these, say the authorities, must be construed *ut res magis valeat, quam pereat*, and in dealing with them it should be the aim of the courts to preserve and not to destroy. Einstein vs. Shouse, 24 Fla., 490, 5 South. Rep., 380; Kelly vs. Calhoun, 95 U. S., 710; Carpenter vs. Dexter, *supra;* Touchard vs. Crow, 20 Cal., 150, 160. It is the policy of the law, observes the Supreme Court of Minnesota in Brunswick-Balke Calendar Co. vs. Brackett, *supra*, to uphold certificates of this character, and wherever substance is found obvious clerical errors and all technical omissions or defects will be disregarded. Again,

should we read, as it might be said we should, the final "C" as standing for or intended to indicate the "court," so that the entire suffix to the signature should read "Deputy Clerk of Superior and Justice Court," it seems to us entirely clear and reasonable to hold that thus read in connection with the attestation it was intended by the officer to indicate his dual official capacity of clerk and justice. If nothing followed the signature but "J. C.," or "Justice Court," we would be obliged, in view of the attestation and the law, to hold that it was a clerical error or an inaccuracy and intended to indicate the official character of justice of the peace, and it is nothing more than reasonable to hold that the last two initials, if to be read, the former as "justice," and the latter as "court" or "courts," were used, the former as standing for justice and the latter as applying not only to it, but also to "Superior," as indicated by the letter "S." Again, if it is to be assumed that "J." does not stand for "Justice," but for some other word, there is still enough to signify the office of the Clerk of the Superior Court.

Inartificialness in the execution of these instruments cannot be permitted to defeat them, if looking at them as a whole, we find that they reasonably and fairly indicate a compliance with the law.

In reaching this conclusion we have not overlooked the use of the word "Circuit" in the body of the certificate. Our judgment as to this is, that, in the ab-

sence of evidence that there is any such court in Georgia, the suffix to the signature must control as showing that the person taking the acknowledgment was acting in the authorized official capacity indicated by it, and that the word "Circuit" was written at least unadvisedly, even if by the officer himself, and is to be controlled by the designation following his signature which is to be presumed to have been made by him and to have been a subsequent, if not the last, act in the matter.   Carlisle vs. Carlisle, 78 Ala., 542.

In what has been said, the fact that the acknowledgment was taken by a deputy, if taken in the capacity of Clerk of Superior Court, instead of that of a Justice of the Peace, has not been noticed.   In Hope vs. Sawyer, 14 Ill., 254, a question arose upon the legality of the record in Illinois of a deed acknowledged in Missouri, the certificate of acknowledgment being signed in the name of the Clerk of the Circuit Court, "by E. Baker, deputy clerk."   It was objected that the acknowledgment should have been made before and certified to by the clerk in person.   "The objection," says the opinion, "is not well founded.   The acknowledgment purports to have been taken by the clerk, and it is certified in his name and under the seal of the court. *Prima facie* this is sufficient.   The seal of the court proves itself, and we must presume that it was affixed by the proper officer.   The presumption is that the clerk was authorized by the laws of Missouri to act through a deputy, and that Baker was regularly appointed as such.   The deputy had the power to use the name of the clerk and attach the seal of the court.

\* \* \* The certificate in question was none the less the act of the clerk because made by his authorized deputy." Devlin on Deeds, sec. 475; Webb on Record of Title, 62. In Small vs. Field, 102 Mo.. 104, where an acknowledgment of a deed to land in Missouri, taken before a deputy clerk of a territorial District Court in Washington Territory was held sufficient notwithstanding the statutes of the United States providing for the appointment of the clerk of such court made no provision for a deputy, though deputy clerks of territorial courts are expressly spoken of elsewhere in the statutes, the Supreme Court of Missouri observed : "If necessary to uphold this certificate we would presume that a law of the territorial legislature was in existence authorizing the appointment of a deputy clerk. \* \* \* Moreover the seal of the court being affixed to the certificate, carries with it *prima facie* evidence that it was rightfully affixed, and throws the burden of overcoming the *prima facie* case thus made, on the objectors to the sufficiency of the certificate." Musser vs. Johnson, 42 Mo., 474.

In the case before us it is be presumed from the words of the certificate, to such effect, that the seal of office of the Clerk of the Superior Court was impressed upon the original certificate. The absence from the record or from the transcript of such seal, or anything as representing it, is not sufficient to overcome the presumption created by such words. The ordinary provisions of statutes regulating the recording of instruments do not contemplate the inscription of public official seals upon the record. Devlin on Deeds, sec.

700 ; Webb on Record of Title, sec. 74; Geary vs. City of Kansas, 61 Mo., 378; Hammond vs. Gordon, 93 Mo., 223; Ingoldsby vs. Juan, 12 Cal., 564; Smith vs. Dall, 13 Cal., 510; Jones vs. Martin, 16 Cal., 166; Griffin vs. Sheffield, 38 Miss., 359; S. C. 77 Am. Dec., 646; Hedden vs. Overton, 4 Bibb, 406; Sneed vs. Ward, 5 Dana, 187; Ballard vs. Perry, 28 Texas, 347; Witt vs. Harlan, 66 Texas, 660; Coffee vs. Hendricks, *Ibid*, 676; Gale vs. Shillock, Dak., ——; 29 N. W. Rep., 666. In Jones vs. Martin, *supra*, where, as here, the body of the certificate indicated a seal by apt words, the words "No seal" appeared in the certified copy where the notarial seal should have been, and it was held that these words did not imply that no seal was affixed to the instrument by the notary who took the acknowledgment, but was a mere note of the recorder of the place of the notarial seal, which he probably had no means of recording, and which it was not necessary that he should record.

As it is to be presumed from these words of the certificate that a seal was impressed upon the original, the only distinction between the case at bar and those cited from Illinois and Missouri is, that here the certificate is signed by the deputy simply in his own name, without using that of the clerk. There is conflict of authority as to how such certificates of acknowlment should be executed when they are made by deputies. In Tennessee it was held, Beaumont vs. Yeatman, 8 Humph., 542, that such certificates should be in the name of the deputy; and likewise in a late case in Georgia, where an acknowledgment was taken out

of the State, McKenzie vs. Jackson, 82 Ga., 80; and in California a certificate was held valid which stated, that "before me, the undersigned, County Clerk of Sonoma county, personally appeared   \*   \*   ," and was signed "John A. Brewster, Deputy County Clerk of Sonoma county," the principal's name not appearing, Touchard vs. Crow, 20 Cal., 150. See also Rose vs. Newman, 26 Texas, 131; Cook vs. Knott, 28 Texas, 85. In Talbott's Devisees vs. Hooser, 12 Bush, 408, where the acknowledgment was in fact taken by the deputy clerk, but the name of the clerk alone was signed by such deputy to the certificate, the acknowledgment was decided by the Supreme Court of Kentucky to be valid, and this too, although the deputy was a minor, the statute not prescribing the qualifications of a deputy. The doctrine of this case is that all official acts should be done in the name of the clerk, and not in that of the deputy. The view expressed in Devlin, sec. 474, is that the signature of the deputy alone does not invalidate the acknowledgment, but that the better practice is for the deputy to sign the name of the principal, by himself as deputy. That this is the better rule in all cases where a deputy acts, we will not deny, but in view of the conflict of authority and the liberal views governing in cases of these acknowledgments, we cannot hold this certificate invalid on account of the manner in which the deputy has signed, but must regard it as sufficient in this aspect; and this being so, and the presumption being that the official

seal of the Clerk of the Superior Court of Thomas county, Georgia, was affixed to the original certificate of acknowledgment, and rightfully so, Touchard vs. Crow, Small vs. Field, *supra*, the certificate must be sustained, though executed by a deputy, and in another State. That the act is one which in its nature may be performed by a deputy, cannot be denied, Devlin, sec. 473, Webb on Record of Title, sec. 62, and there is, in view of the authorities cited above as to deputies and the manner in which they may sign, in the fact that the name of the clerk does not appear, nothing to except this certificate from the rule which presumes, *prima facie*, that the appointment of Bracewell as the deputy clerk was valid. Hope vs. Sawyer, and Small vs. Field, *supra*.

If we refer the taking of the acknowledgment to Bracewell's capacity as justice of the peace, then the certificate shows that he had an official seal, as such officer, and no other evidence of such capacity is required by the act of 1873, *supra*.

In Carpenter vs. Dexter, *supra*, it is announced as law, that where one State recognizes acts done in pursuance of the laws of another State, the courts of the former will take judicial cognizance of these laws so far as may be necessary to determine the validity of the acts alleged to be in conformity with them. We find no other decision to this effect, the general rule being that the statute law of another State is to be proved according to the law of the former in which the trial is had. Tuten vs. Gazen, 18 Fla., 751; Session

vs. Reynolds, 15 Miss. (7 Smedes & M.), 130; Whartons Law of Evidence, sec. 302; Greenleaf on Evidence, secs. 486, 489. We may remark, however, that we are not advised that the application of the rule announced by the Supreme Court of the United States would have led to a conclusion against the validity of the acknowledgment in question.

A further question, suggesting itself, is what effect is to be given the fact that the record in Marion county was made before the act of 1873. Does this fact except such record or a transcript thereof from the effect of the provision of our Constitution set out above? The act of 1873 was in effect an amendment of the existing prior legislation referred to in this opinion. As has been shown in the statement of that legislation, a purpose of it was the regulation of the acknowledgment and proof, made out of the State, of deeds of lands here, for the purpose of their being used or recorded here. Upon the approval or the act of 1873 the acknowledgment of the deed became as valid as it would have been, from the date of its execution, had it been acknowledged after the approval of the act, and a record of this deed, made upon the originally defective acknowledgment, immediately after the statute became operative, would have been as valid for all purposes involed in this cause as if the deed had been acknowledged subsequent to the approval of the statute. This deed, as acknowledged standing upon the record, as it did, at the time the act became effective,

we see no good reason why the record was not, from that time, as valid as if it had been made immediately after the approval of the statute; or, in other words, why it was not duly recorded from that time. Such we think was the logical and necessary effect of the statute upon the existing record. The deed was duly recorded from that time, and the record or a certified copy was admissible under the section of the Constitution set out above. East vs. Pugh, 71 Iowa, 162; Fowler vs. Merrill, 11 Howard, 375.

No objection that the original was not within the custody or control of the party offering the copy, appears to have been made, and hence we conclude that this requirement was complied with or waived.

That the officer acted within his jurisdiction appears sufficiently upon the face of the certificate. Devlin, sections 482, 486.

Other assignments of error need not be noticed.

The judgment must be reversed and remanded for proceedings not inconsistent with this opinion. It will be so ordered.