LOWELL HOLBROOK, APPELLANT, VS. T. LANE BETTON, AND JOHN F. HIGGS, APPELLEES.

1. A purchaser under an executory contract, in possession of the premises, has an interest, which is the subject of mortgage or sale, and which is devisable and descendible as his real estate.

2. H., a vendor, and L., a vendee, agreed to rescind a contract of sale, the former paying to the latter the value of the property over and above the amount remaining due, and the latter surrendering the contract. L., prior to this agreement, being in possession, executed a mortgage on his equity, to B., which had been duly recorded, and was outstanding at the time; of which, however, H. had no actual notice. HELD, that this rescision did not affect or impair the rights of B., the mortgagee, and that he was entitled to a foreclosure and a sale of the property in the possession of H. HELD, further, that H. should be considered in the light of a subsequent purchaser, and that as a consequence, the record of the mortgage to B., was sufficient notice to him of its existence.

3. In such a case, where the first note secured by the mortgage to B. was paid by, and assigned to H., it would be fruitless to apply the proceeds of property which he owned, to the satisfaction of the note thus paid, unless the property was inadequate to pay more than this note and the amount due under the contract of purchase at the time of its rescision.

This is an appeal from a decree of the Circuit Court for Leon County, Hon. J. Wayles Baker, presiding.

The appellees, Betton & Higgs, filed their bill in the Court below, for the foreclosure of a mortgage given to them by Walter F. Lloyd, on a certain lot and premises in the city of Tallahassee.

In 1843, Walter F. Lloyd entered into a contract with Call & Walker, for the purchase of the lot in question, the latter agreeing to make a good title to the premises when the former should complete the payments of the purchase money.

Prior to this contract, Call & Walker had executed a mortgage on the premises, which was outstanding at the time of the agreement with Lloyd.   Early in the year 1844, Holbrook, by an arrangement with Call & Walker, and with the consent of Lloyd, acquired a transfer of the mortgage referred to, and received a conveyance of the equity of redemption from Call & Walker, agreeing to perfect the contract which had been entered into between Call & Walker and Lloyd.   At the Spring term, 1844, of the Superior Court for Leon County, Holbrook, on a proceeding instituted against Call & Walker, on the mortgage, obtained, by consent, a decree of strict foreclosure, and on a statement of the account between Call & Walker and Lloyd, then made, there was found to be due by Lloyd, under his contract, aforesaid, the sum of $2,428 21. It was then agreed between Holbrook and Lloyd, that on the payment of this sum, with interest, in three annual instalments, on the first days of January of the years 1845, 1846, and 1847, the decree of foreclosure aforesaid, should be transferred to Lloyd, so as to vest in him all the title held by Holbrook.   In February, 1846, Lloyd mortgaged the lot to the appellees to secure the payment of two promissory notes, each for the sum of $1,156 95, with interest from date at eight per cent. per annum, one payable eighteen months and the other three years after date.   In February, 1847, after the mortgage to appellees had been executed and delivered, and recorded in the office appointed by law for the registration of deeds and mortgages, it being ascertained that Lloyd was in arrear to Holbrook, and owing for principal and interest upon said contract of purchase, the sum of $1150 76, and being unable to pay this balance, it was then agreed between them, that Lloyd should " value on the house of Holbrook in New York," for the value of the lot and improvements, over and above the amount

due thereon for the purchase money, and should surrender or cancel his contract of purchase. Accordingly, Lloyd surrendered said contract and drew on Holbrook & Nelson of New York, to the amount of $3143 50, which drafts were honored and paid by Holbrook. In August, following, Higgs; one of the appellees, being in New York, applied to Holbrook to cash the note given by Lloyd, as aforesaid, payable eighteen months after date, and informed him for the first time, that he held the mortgage referred to. Holbrook, after some hesitation, advanced the amount due on the note, and took it with an assignment endorsed thereon to Holbrook, Nelson & Co., without recourse. This, it is alleged, was the first time that Holbrook knew or heard of the mortgage to appellees.

It further appears that the property conveyed in the mortgage to appellees, is described " as all that part of lot " number one hundred and seventy-one in the original plan " of the city of Tallahassee upon which the brick building " occupied by Lloyd is situated, fronting twenty-five feet " on Monroe street, more or less, and running back sixty- " five feet," which description covered by its terms only a portion of the premises included within the terms of the original contract of purchase by Lloyd. The contract of purchase, includes within its terms, twenty-two feet of lot number one hundred and seventy, fronting on Monroe street, and only *eight feet of lot one hundred and seventy-one.*

The second note due by Lloyd to appellees being unpaid, this proceeding was instituted, and the Court below decreed a foreclosure of the mortgage, and directed a sale of the property to pay the amount due. From this decree Holbrook appealed.

*D. P. Hogue* and *M. D. Papy*, for appellant.

1. The appellant, Holbrook, was the legal owner of the premises in controversy, by obtaining the transfer of the mortgage held by the Union Bank, and a conveyance of the equity of redemption by Call & Walker, the mortgagors.

2. Holbrook was the legal owner by the decree of strict foreclosure in the case instituted by him on the mortgage given to the Bank, which decree was entered by consent of the mortgagors, and the property received in full satisfaction of the debt secured by the mortgage. 4 Stewart & Port, 138.

3. The record of a mortgage is no notice to a prior incumbrancer, but only to a subsequent purchaser. Therefore the record of the mortgage from Lloyd to Higgs was no notice to Holbrook. 1 Sanford, 419 ; 3 ib., 193 ; 2 Barbour, 151 ; 7 Cranch, 34.

4. If Higgs desired to influence the action of Holbrook, the holder of the legal title, in his subsequent transactions with Lloyd, by which the contract of purchase was surrendered, he should have given to Holbrook *actual* notice of the existence of his mortgage. 1 Sanford, 419; 3 ib., 193 ; 2 Barbour, 151; Law Rep., 445.

5. In the absence of actual notice, the prior incumbrancer or person holding the legal title, is not bound to act in reference to the rights or equities which may exist in favor of a subsequent incumbrancer.

6. Where the answer of a defendant is responsive to the bill, it must be taken as true, unless contradicted or disproved by two witnesses, or one witness with corroborating circumstances. The answer of Holbrook, therefore, in those parts which are responsive to the bill, must be

taken as true, because it is uncontradicted by competent and sufficient testimony. 1 Paige, 239; 3 Wend., 532.

7. The testimony of Lloyd is incompetent to disprove the statements in Holbrook's answer. 1. Because he is a party to the suit. 2. Because he is directly interested in the deceree to be rendered in this cause. 3 Paige, 368; 2 Wheat., 380; 4 Florida, 481.

8. The mortgage to Higgs only covered eight feet of the ground upon which the store mentioned in the pleadings, stands. It cannot be supposed to include more than its terms import. If Holbrook is considered in the light of a purchaser of Lloyd's equity, which is contrary to the facts, then the registry of Higgs' mortgage is notice to the extent of its contents, and no more. 1 John. Ch., 299; 18 John. Rep., 544.

9. The payment to Higgs by Holbrook, in August, 1847, was the full value of his lien upon so much of the premises as is covered by his mortgage.

10. The assignment of the note to Holbrook carried with it the mortgage given to secure it, and therefore Higgs cannot set up the mortgage in favor of the note still in his hands, until the property embraced in the mortgage is applied to the payment of the note assigned to Holbrook, and then only for such balance as may remain after such application. 2 Florida, 27.

*J. T. Archer,* for appellees.

SEMMES, J.:

The true point upon which the merits of this case rests, is as to the effect of the rescision of the contract of purchase, and the subsequent payments or advances made by Holbrook to Lloyd, in consequence of that rescision.

The complainants rest their case upon the following state

of facts :—In 1843, the defendant, Lloyd, went into the possession of certain real estate in Tallahassee, under a contract of purchase from Call and Walker, they having previously mortgaged the property to Hackley, who assigned it to the Union Bank. The notes given by Lloyd were subsequently assigned to defendant, Holbrook, in exchange for certain securities he held against Walker; and for the purpose of securing to Holbrook the payment of those notes, Call and Walker conveyed to him their equity of redemption, and induced the Union Bank to assign to him the mortgage deed. In 1846, Lloyd being still in the possession of the property, under the contract of purchase, executed the mortgage under which the complainants claim, and which was duly recorded.

Whatever may have been the character or extent of Lloyd's equity, previous to the assignment of Call and Walker's mortgage to Holbrook, it is unnecessary to consider. It is, however, clear that after the assignment, and when Holbrook had united in himself the legal and equitable title, and assumed the execution of the contract of purchase, he became, for all legal purposes, the vendor of Lloyd.

At the time Lloyd executed his mortgage, he was not only in possession of the premises, free of rent, but, under the contract of purchase, had an interest in the land, the subject of mortgage or sale; an interest which was devisable and descendible as his real estate. Craig vs. Leslie, 3 Wheat., 577.

It is insisted that the contract of purchase is to be considered as a simple executory agreement, creating no charge on the land, or attaching to it in any manner as an incident. This is undoubtedly true at law, but equity considers the contract in a different and more favorable light, and, for many purposes, treats it as specifically executed. The vendee is regarded as the equitable owner of the prop-

erty, and, as land, it passes by descent to his heirs.  1 Fonbl.
Eq., Ch. 6, Sec. 9 ; 2 Story's Eq. Juris., Sec. 790.   Hol-
brook, as the vendor of Lloyd, was bound to a specific per-
formance of the contract.   For his security, he had a par-
amount claim on the land, by virtue of the vendor's equi-
table lien, and which would bind the estate, not only in the
hands of the vendee, but his heirs, and those claiming un-
der him.   From the time that Holbrook became the owner
of the legal title, he held the same for the benefit of the
purchaser, the trust attaching to the land.  Green vs. Smith,
1 Atk. R., 572 ; 6 John C. R., 402.   And it is in view of
his character as trustee, that he would be compelled to sur-
render the title on the payment of the purchase money.
Lloyd's right, therefore, to mortgage this property, or con-
vey it in any other mode, cannot be questioned.

Undue importance, we think, has been given by counsel
to the decree of strict foreclosure rendered by the Circuit
Court, in 1847, against Call and Walker.   The relative po-
sition of Lloyd and Holbrook, as to their respective rights
and liabilities, was not affected by this decree.   Lloyd was
no party to this proceeding, though the party in interest.
In possession, and asserting his claim to the property by
virtue of his contract with Holbrook, his equity was para-
mount to any rights growing out of the mortgage debt, for
had Holbrook obtained a decree for the sale of this prop-
erty, in satisfaction of the debt, a Court of Equity would
not have hesitated to enjoin the sale, upon the application
of Lloyd.   The bill for forcelosure was against Call and
Walker alone, and the decree could only vest the title as
against the party to the suit ; but they had previously con-
veyed their equity of redemption, and had no longer any
interest in the property ; and their consent, entered of re-
cord, surrendering the property in satisfaction of the mort-
gage debt, impaired no one's interest, and vested Holbrook

with no additional right. The mortgage in the hands of Holbrook was in no manner available, except that it secured to him the legal title to the property. His purpose in procuring, through Walker, an assignment of the mortgage, was not to keep it alive as a security for the debt, or to enforce at any time a collection of that debt, but solely with the view of obtaining the legal title, as a security for the payment of the notes given by Lloyd, under the contract of purchase, and at the same time place himself in a position to perform his part of that contract. By the assignment of the mortgage, and the purchase of mortgagor's equity of redemption, Holbrook became in fact and in law as fully invested with the legal title as he could have derived under any decree of strict foreclosure. Whether by this union of the legal and equitable title, the mortgage debt became extinguished, it is of no consequence to consider. It is sufficient that the property in the possession of Lloyd, was not liable for the payment of the debt, or any part of it. As to the agreement entered into between Lloyd and the attorneys of Holbrook, about the time this decree was rendered, it cannot affect the merits of this case in any way. It is not a substitution for the original contract of purchase, but is endorsed on it, and recognizes its validity. It secures to Lloyd, it is true, additional time for the payment of the purchase money, Holbrook agreeing, on his part, to assign the decree on the payment of the notes. It was a mere change in the time of payment by Lloyd, without increasing or diminishing the liability of Holbrook. Up to this time, the relative position and the rights of the parties were in no manner changed; Holbrook, holding the technical legal title in trust for his vendee;—the complainants, the mortgage of Lloyd upon his equity, while he held the naked contract of purchase. Sometime after this, the contract of purchase was rescinded, and delivered up to

Holbrook, in consideration of his allowing Lloyd to value, on his house in New York, for the said lot and improvements, over and above the sum of $1,150, then due on account of the purchase money. In pursuance of this agreement, Holbrook honored the drafts of Lloyd to the amount of $3,143. It is insisted, in argument, that Holbrook, in this transaction, is not to be considered in the character of a purchaser of Lloyd's equity, but that the payments made to Lloyd are to be regarded as advances made by Holbrook as a *prior incumbrancer ;* and unless he had actual notice of the complainants incumbrance, before these advances were made, he should be protected in a Court of equity.

As a general rule, it is undoubtedly true that a prior incumbrancer, or person holding the legal title, is not bound to act in reference to the rights or equities which may exist in favor of a subsequent incumbrancer ; and if the defendant, Holbrook, stood in reference to this case in the light of a prior incumbrancer, with a mortgage to cover future advances, actual notice of the outstanding equity would be requisite. Shirras vs. Craig, 7 Cranch, 34 ; 2 Barb. C. R., 297, 303. We do not question the doctrine that a mortgage given to secure future advances, is a protection to the holder, for all advances made prior to the receipt of actual notice of the intervening title ; for otherwise the mortgage, to the extent of its provisions, would be a fruitless security, and it would be impossible for a prior creditor to protect himself against loss. But the reason of the doctrine shows its want of application to the case before us.

The subsequent advances are commensurate with the terms of the deed—they are based upon the faith of the deed, and are a part of the original transaction. But where these advances are not provided for in the security, they must of necessity rest upon a new agreement between the parties not growing out of the original contract, but inde

pendent of it. Aside from these considerations, the mortgage lien in this case was extinguished, and the mortgage merged in the decree of foreclosure.

We do not question the right or capacity of the parties to rescind the contract of purchase by a surrender and acceptance of the title papers, so far as their interest are involved. Between them the surrender would be good for all purposes. But where the rights of third persons founded on the contract, as in this case, are affected, the surrender whether by delivering up of the contract or a conveyance, would be a fruitless effort to defeat an outstanding equity, the evidence of which had been duly recorded. Otherwise it would be in the power of Lloyd to defeat the lien of his own mortgage by a parol agreement with his vendor. The effect of the surrender was to vest in Holbrook, the equity of Lloyd as effectually as could have been done by a deed of conveyance. It was so designed, for the agreement to pay and the actual payment of the value of the lot and improvements, by Holbrook, so far from being made in relation to any mortgage or title he held, was the consideration of the surrender by which Lloyd's remaining equity passed to Holbrook. It is true, that technically, Holbrook was not a purchaser, for there was no deed of conveyance to him. But none was necessary, for he held the legal estate and the only incumbrance upon it, in Lloyd's hands, was Holbrook's agreement to make titles on the payment of the remaining instalment of $1150.

Under this state of facts, we feel bound to consider the defendant, Holbrook, in the light of a subsequent purchaser, and as a consequence, the record of Lloyd's mortgage sufficient notice to him of that incumbrance.

The only remaining question to be disposed of is, *in re-*

Holbrook vs. Betton & Higgs.—Opinion of Court.

ference to the first note given by Lloyd under his mortgage, amounting to $1156 48.

Holbrook, it appears, in 1847, paid this note and took an assignment of it. And he now claims the benefit of the mortgage security, and insists that the property should first be applied to the satisfaction of this note.

That it has a priority over the mortgage note, in the hands of the complainants, is true. But why apply the proceeds of property of which he is the owner, to the payment of an incumbrance from which he has relieved it? He has all the benefit of the payment by having discharged the mortgage lien to the extent of the note. If the property was inadequate to pay more than this note, and the sum of $1150, originally due from said Lloyd, under the contract of purchase, the question would present a different aspect. As it is, the only incumbrance for which the property should be chargeable, is the remaining note due the complainants.

It is therefore ordered and adjudged, that the decree of the Court below be affirmed, except in such particulars as conflict with the opinion of this Court. It is further ordered, that this cause be remanded to the Court below, with instructions to modify its decree in conformity with this opinion.