CHARLES HARRIS, BELLE HARRIS, and FLOYD HARRIS, *Appellants*, vs. HERMAN J. ZEUCH, *Appellee*.

137 So. 135.

En Banc.

Opinion filed October 20, 1931.

184

*T. B. Ellis, Jr.,* Attorney for Appellants;
*Vocelle & Mitchell,* Attorneys for Appellee.

DAVIS, Commissioner:—The appellee, Herman J. Zeuch, whom we will refer to as the complainant, instituted suit for the foreclosure of a mortgage in Indian River County against Charles Harris and his wife, Belle Harris, mortgagors, and one Floyd Harris, whom we will refer to as the defendants. In the copy of the Mortgage which is attached to and made a part of the bill, it is made to appear that it was given to secure purchase money. The bill alleges that the property described therein had been conveyed by the mortgagors to the defendant, Floyd Harris subject to the mortgage of complainant.

The defendants filed an answer to the bill and therein admitted the execution of the notes and mortgage and, they also admitted the execution of the deed from the defendants, Charles Harris and wife to the the defendant Floyd Harris, but denied that there was any indebtedness, and averred that whatever consideration there may have been therefor, failed, for reasons set out in the answer substantially as follows;

That for a long time prior to the transaction the complainant had been a large stockholder, president and active head of a pioneer land company of the East Coast of Florida; that the title of said company was publicly recognized and accepted as record title; that the statements of complainants as to the titles of any of such lands were usually accepted as to same; that the complainant had a general reputation in Indian River County as a man of honesty and fair dealings, to such an extent that he was known as the "Father of Vero"; that over a period of years, com-

plainant and defendants had done a great deal of business together, and that complainant in a large number of instances acted as agent of the defendant, Charles Harris, in buying and renting lands, and that in the course of such transactions a sense of confidence was developed in said defendant toward the complainant, all of which was known to the complainant, and the complainant had not theretofore betrayed the trust and confidence reposed in him by said defendant; that upon learning that the defendant, Charles Harris, was desirous of buying the said land, the complainant offered to get and have conveyed to the said defendant the said land, which was and is a part of the lands which originally belonged to complainant's company, it being understood that complainant was to make a reasonable profit on the sale thereof to said defendant; that complainant then and there "represented, covenanted and warranted" to said defendant that he "had arranged to buy the said lands, and that he had had the titles to said land examined by his attorneys, and that the title was a good record title, and that he had procured a deed with the name of the grantee left blank; and that said deed was correctly executed, and that the same had been examined by counsel learned in law both as to manner of execution, and as to form and substance; and that he, the complainant would arrange all details, and himself, for his oldtime friend, the said defendant, get terms arranged, and carry a mortgage for said defendant, for the part of the purchase price that the said defendant did not then pay in cash;" that the said defendant was not versed in the formalities of execution of deeds, and examination of titles, that by reason of the trust and confidence in complainant, growing out of former transactions, he believed said representations to be true, not knowing the same to be false and untrue and allowed the complainant to buy said lands for him and did not have an independent examination of the title made by an attorney, being dissuaded by the complainant from having such ex-

amination made, and upon said representations he consummated the deal, and allowed the complainant to obtain the deed to said land and insert therein the name of the defendant, Charles Harris, as grantee and record the same; that none of the defendants learned that the said representations were false and untrue until at or about the time of the filing of the suit, when they also learned that the "said deed was not executed under corporate seal of said company" (the grantor), and that neither of said defendants had ever had the deed in their possession or seen the original thereof.

It is further averred that the grantor of the said Charles Harris, was a corporation under the laws of Iowa and was not authorized to transact business in Florida; that at or about the time of filing suit, defendants learned that the only deed by which said grantor corporation claimed to hold title, shows on the face thereof that it was not acknowledged as required by law, before an officer authorized by the laws of Florida to take acknowledgment of deeds, a certified copy thereof being attached as an exhibit to the answer; that in making the representations aforesaid, the complainant intended to defraud and knowingly defrauded the said defendant, Charles Harris; that upon learning of alleged defects, defendants offered to release the said land to the complainant and to make any proper deeds, but that complainant refused such offer; that when the property was conveyed to Floyd Harris, who is the son of the other defendants, he was advised of the said representations of the complainant and that any claim the defendants, Charles Harris and Belle Harris may have had against the complainant because of his said representations was "intended and was by their said deed to Floyd Harris, effectually assigned, conveyed and set over to said Floyd Harris," who is the owner and holder of such claim; that defendant, Floyd Harris, is and has been unable to sell the property and cannot safely improve it. Defendants

offer to do equity and pray that the sale be rescinded; that the complainant be required to surrender and deliver up the said notes in his bill described, and to pay over to whom may be decreed to be entitled thereto the moneys received by him on the purchase of said land with legal interest and for general relief.

Upon motion of the complainant, that portion of the answer setting up a defense to the bill and praying for affirmative relief was stricken therefrom. From this order the defendants took an appeal to this court.

The first question for us to determine may be stated as follows:

Does the record show a sufficient basis in the allegations of the answer to sustain a fiduciary relationship between the defendant, Charles Harris, and the complainant, and to justify a rescission of the contract and a cencellation of the notes?

It has been held by this court that

"A misrepresentation, to be a ground for rescission, must be in reference to some material thing unknown to to the plaintiff, either from his not having examined or for want of opportunity to be informed or from his entire confidence reposed in the defendant. As said in the case of Glass vs. Craig, *Supra*, such confidence should be a right growing out of the relations of the parties of a fiduciary character." Stokes vs. Victory Land Company, 99 Fla. 795, 128 So. 408, 411.

Admitting that the complainant made false statements of fact, sufficient facts are not shown to relieve the defendant, Charles Harris, from the duty of protecting his interest by having the title to the land described in the mortgage, examined and reported upon by someone competent to pass upon title to lands in Florida.

This court has gone far in its interpretation of the term, "fiduciary or confidential relation", which it has declared "is a very broad one." Speaking through Mr.

Justice Terrell, we said in Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A. L. R. 1173:

> "Stripped of all embellishing verbiage, it may be confidently asserted that every instance in which a confidential or fiduciary relation in fact is shown to exist will be interpreted as such. The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief."

If the defendant, Charles Harris, reposed confidence in the complainant and because of such confidence took a deed to the property, there is nothing to show that the complainant recognized or accepted any trust reposed in himself by Mr. Harris relating to the said transaction. A large part of the business of the world, as we all know or have reason to believe, is done on faith, but a contract should not be set aside and obligations cancelled merely because of misplaced confidence reposed in a business adversary. Here, we will repeat what was said in George E. Sebring Co. vs. Skinner, 100 Fla. 315, 129 So. 759, 761.

> "While it is true that one cannot by a false representation induce carelessness upon another's part in the matter of signing papers and then profit by such negligence, the policy of the law is that he who will not reasonably guard his own interest when he has reasonable opportunity to do so, and there is no circumstance reasonably calculated to deter him from improving such opportunity, must take the consequences. Where there is such inattention amounting to gross carelessness on the one side and misstatement upon the other and but for the former the latter would not be effective and loss occurs to the inexcusably negligent one, he is remediless. 'Not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation, but, first, because the consequences are attributable to inexcusable inattention of the injured party; and second, because the court will not protect those who with full

opportunity to do so, will not protect themselves.' '' George E. Sebring Co., vs. Skinner, 100 Fla. 315, 129 So. 759, 761.

As we see it, the defendant, Charles Harris, by the exercise of ordinary care, had ample opportunity to protect himself from what may have been an ill-advised deal. Instead of doing what an ordinarily prudent man would have done under the circumstances, and dealing at "arm's length" with the complainant, he accepted as true the said representations on the strength of his friendship and former dealings (not of like character,) with the complainant, and the complainant's general reputation for fair dealing. A court of equity "will not protect those who with full opportunity to do so, will not protect themselves."

Paraphrasing the language of Judge Ellis in Glass vs. Craig, 83 Fla. 408, 91 So. 332,

The averments of the answer are not inconsistent with the idea that the defendant (Charles Harris) acted in the entire transaction with the most careless and inexcusable indifference to his own interest, while having no right whatever to rely upon the representations alleged to have been made by the complainant.

The allegations of the answer are not sufficient as a basis for rescinding the contract and cancelling the notes mentioned in the bill of complaint.

It is contended on behalf of the appellant that the deed to Charles Harris was ineffectual to convey title, because the corporate seal of the grantor was not affixed thereto. If the instrument was defective for want of a seal and therefore insufficient to convey a legal title to the land, it passed the equitable title thereto, (14a C. J. 537-8. See also, Ward vs. German-American Lumber Co., 63 Fla. 582, 56 So. 565; Walters vs. Miller, 70 Fla. 432, 70 So. 629; Tucker vs. Gray, 82 Fla. 351, 90 So. 158) and a purchaser under an executory contract in possession of the premises, has an

interest which he may mortgage or sell. Halbrook vs. Betton, 5 Fla. 99.

It is also contended by the appellants that the grantor of the said Charles Harris was a foreign corporation, organized after June, 1907, and that it could not effectually convey land in Florida, because it had not complied with the statute requiring foreign corporations to obtain a permit to transact business here. The statute that is invoked to sustain this contention provides for penalties and fines to be imposed upon the officers and agents of foreign corporations for the violation of its provisions and states:

"But no violation of this law shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof." Sec. 4095. Rev. Gen. Statutes of Florida. (Sec. 6026, Compiled Gen. Laws, 1927).

It follows that whatever title Charles Harris may have acquired under the instrument, that purported to convey title to him, was not affected by reason of the fact that his grantor, a foreign corporation, was not authorized to transact business in Florida.

The next contention made by appellant is that the deed from one Harry B. Weaver and his wife, Marjorie Z. Weaver, to the grantor of the said Charles Harris, was not acknowledged as required by law before an officer authorized by the laws of Florida to take acknowledgment of deeds.

There is no contention here that the deed was not properly executed, nor that the rights of third persons intervened. As to the parties to a deed, except so far as particular statutes may prescribe, the absence of an acknowledgment does not affect its validity. 1 R. C. L. 258. In order for a conveyance to effectually pass a married woman's right of dower in the land conveyed, the deed must be acknowledged by her before an officer authorized to take acknowledgments and in the manner prescribed by the statute, and the officer's certificate shall set forth all of

the statutory requirements (Sec. 5676 (3803) Compiled General Laws, 1927), but we do not understand that it is essential to the ownership of land, that execution of the deed under which the title is claimed, from persons other than married women, must be acknowledged by the grantor. The purposes of acknowledgment are to entitle an instrument to be recorded.

A defect in the certificate of acknowledgment attached to the deed to Charles Harris' grantor, that would cause the deed to be inoperative as to his wife's right of dower, and make the recording thereof a useless undertaking, would not affect the conveyance of his title, subject to his wife's dower interest, and a defective certificate of acknowledgment to the deed cannot be used as a foundation for the defense of failure of consideration sought to be set up by the defendants. However, certificates of acknowledgment must not be tested by technical rules. The courts will sustain a certificate of acknowledgment whenever it is possible to do so. 1 R. C. L. 281, Summer vs. Mitchell, 29 Fla. 179, 10 So. 562, Cleland vs. Long, 34 Fla. 353, 16 So. 272, Platt vs. Rowand, 54 Fla. 237, 45 So. 32, A. S. R. 729.

Here, we have held that the title of the officer may be written out fully in the body of the certificate (of acknowledgment), and when this is done, its omission from the signature is immaterial, or it may be affixed to the signature, and, if so, this is, of itself, sufficient, and that the use of initials generally understood to stand for the title to an office will answer. Summer vs. Mitchell, *Supra.* Ruling Case Law (vol. 1, page 287) is authority for the statement that if an officer has affixed his official seal to the instrument, that is sufficient evidence of his authority. In the instant case, the certificate recites that the grantors "personally appeared before me, an officer duly authorized to administer oaths and take acknowledgments, etc.". It concludes as follows: "Witness my hand and official seal",

etc., and is signed "Erna L. Eckert" with "(N. P. Seal)" affixed. This we think, is sufficient to show that the acknowledgment was made before a Notary Public, who, under the statute (Sec. 5699 (3823) Compiled General Laws, 1927) was authorized to take acknowledgments.

The appellee, in his brief, has taken the position that Floyd Harris has not shown himself entitled to a rescission of the original transaction between the appellee and Charles Harris and his wife, Belle Harris, to which he, Floyd Harris, was not a party. We have refrained from discussing that proposition because it was not embraced in the questions raised by the appellants, and in the presentation of which they have failed to show that they are entitled to a reversal of the order from which they have appealed.

The order of the lower court is hereby affirmed and the cause is remanded for further proceedings in accordance with law.

PER CURIAM.—The record in this cause having been considered by the court and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the court as its opinion, it is considered, ordered and decreed by the court that the order of the court below should be, and the same is hereby affirmed and the cause is remanded for further proceedings in accordance with law.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.