DOROTHY IRWIN, *et al.*, v. GILSON REALTY COMPANY, INC.

158 So. 77.
Division A.
Opinion Filed September, 13, 1934.
Petition for Rehearing Denied October 30, 1934.

*John C. Gramling,* for Appellants;

*Stapp, Gourley, Vining & Ward,* for Appellee.

BROWN, J.—Appellant contends that the complainant was estopped from bringing this foreclosure suit at the time it was brought on account of an agreement which was made between the complainant mortgagee and the defendant mortgagor for an extension of time provided the defendant mortgagor made certain improvements on the property, which improvements the defendant made, and on this appeal it is contended in her behalf that the lower court should be reversed upon the authority of the case of Moses v.

Woodward, 109 Fla. 348, 141 So. 117. However, as there is some conflict in the testimony on this point we might not be authorized to reverse the lower court on that account. But there is another error shown by the record in this case, which is duly assigned and insisted upon in argument, which in my opinion calls for a reversal. This bill for foreclosure was filed by a New York corporation on February 21, 1933. The defendant, on April 3, 1933, filed a motion to dismiss the cause on the ground that the complainant foreign corporation had not, on January 1st, 1933, nor up to the time of the filing of said motion, complied with the provisions of Chapter 14677 as amended by Chapter 15726 of the Laws of 1931 by the payment to the State of the tax required by said statute in order to entitle said corporation to do business in this State and in order to permit it to maintain any action in any court of this State.

Section 5 of this Act provided that "any corporation failing to comply with the provisions of this Act for six months shall forfeit its corporate and charter privileges and shall not be permitted to maintain any action in any court in this State until such reports are filed and all fees due hereunder paid. On January 1st of each year the Secretary of State shall make up a list of the corporations of record in his office which have failed to comply with the provisions of this Act and shall mail a copy of such list to the Clerks of the Circuit Courts, the Civil Courts of Record, the Circuit Judges and the Justices of the Peace of this State."

The language of this section indicates that the courts of this State are given the power, of their own motion, to dismiss any suits filed by a corporation which has not complied with the provisions of this Act, as soon as the suit is filed.

On April 26, 1933, the court made an order denying the above motion to dismiss and gave defendant twenty days

in which to answer the bill of complaint. On May 3rd the court extended the time for filing answer to twenty days from the date of that order, and on May 22nd a further extension was made, on motion of defendant, to June 5, 1933, and on May 27, 1933, the defendants filed their answer. The corporation complainant had not complied with the statutes at the time the answer was filed.

The receipt of the Secretary of State, for the payment of the tax required by the statute, appearing on page 79 of the record, is dated June 17, 1933, but the testimony by one of the attorneys for said complainant corporation, appearing on pages 47 and 48, was to the effect that the tax required by the statute had actually been paid on or about May 29, 1933.

Thus it appears that at the time the motion to dismiss for failure to comply with the statute was filed and denied, and at the time the defendants filed their answer, as required by the order of the court, the complainant corporation had not complied with the statute and therefore had no right to maintain the suit. Thus the court erroneously denied the motion to dismiss and erroneously required the defendant to file the answer to a suit which had been instituted by a corporation which had no right under our law to maintain a suit in any court in this State. Surely the subsequent payment of the tax did not cure this error. The motion to dismiss should have been granted, and the complainant required to start its suit all over again after first having complied with the law of this State so as to authorize it to maintain the action in a court of this State? If this is not the correct interpretation of this statute, when, may it be asked, shall the tax be paid? May the complainant corporation wait until the day of the final decree, or the decree of confirmation, or until any day within the time within which the petition for rehearing might be filed? Or,

is it not the duty of the court when a bill is filed by a corporation which has not complied with the law and the defendant moves to dismiss the suit, to promptly grant the motion?

In this case, the court not only denied the motion to dismiss, but made an order requiring the defendant to answer before the corporation had established its right to maintain the suit to begin with. It seems to me that if this statute is to be given any force or effect, the courts should grant motion to dismiss upon non-compliance, and that a failure to do so should be held reversible error.

Section 4 of Chapter 14677 provides that "Every corporation which shall fail to comply with the provisions of this Act within three months after July 1st of each year be deemed to be no longer exercising its charter or corporate privilege in this State."

It would seem that the principles laid down in Diaz v. Parkland Estates, 154 So. 199, would require a reversal of this case.

It is so ordered.

Reversed.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur.

WHITFIELD and BUFORD, J. J., dissent.

BUFORD, J. (dissenting).—In this case the appeal is from decree in favor of the complainant in a suit to foreclose a mortgage.

The complainant in the suit below was a New York corporation. After the suit was filed defendants moved to dismiss on the ground that the corporation had not paid its capital stock tax as required by Chapter 14677, Acts of 1931.

It appears from the record that the motion was filed April 3, 1933, and was denied April 26, 1933. No further

steps were taken by the complainant until after the tax was paid.

The Court made orders extending the time in which defendants were required to file answer until after the tax was paid. Thereupon, answer was filed.

We think the action of the Court in this matter conforms to the law as enunciated by us in the case of Jarvis v. Chapman Properties, Inc., filed May 1, 1933, reported 147 Sou. 860, and in Diaz v. Parkland Estates, filed March 14, 1934, reported 154 Sou. 199. Therefore, no reversible error was committed by denying the motion to dismiss.

The other questions presented are such as to be determined by a consideration of the testimony and they were determined adversely to the appellants on consideration of the testimony by the Chancellor.

We find ample substantial evidence in the record to sustain the findings of the Chancellor and the decree.

WHITFIELD, J., concurs.

### ON PETITION FOR REHEARING.

BROWN, J.—A petition for rehearing has been filed in this case in which it is contended that the failure of the corporation to comply with the provisions of Chapter 14677 of the Acts of 1931 was not properly presented to the court below; that it could only have been presented by answer and not by the method of motion to dismiss. Reference is made to the case of Jarvis v. Chapman Properties, Inc., 110 Fla. 17, 147 So. 860. It is true that in that case the matter was brought to the attention of the Court in the answer, and the corporation filed its report and paid its' tax seven days later. No motion to dismiss the cause had been made by the defendant. It is said in the opinion in that case that:

"There is no law or rule of court which required the dismissal of the cause by the court of its own motion, and no

motion was made to dismiss on this ground. In the absence of such a motion made during the pendency of the suspension of charter privileges, we are not here called upon to determine what the rights of the parties would be in a case where such a motion for such cause is so made."

It is also contended that a motion to dismiss is the method provided by the Chancery Practice Act to raise a defense in point of law, not point of fact; that an answer is the proper method of asserting a defense in point of fact, and that a motion to dismiss, which under Section 33 of the 1931 Chancery Act supplants a general demurrer, cannot be used to present a matter of fact. Reference to the cited section of the Chancery Act shows that it provides that every defense in point of law arising upon the face of the bill, which might heretofore have been made by demurrer, shall be made by motion to dismiss; but the context shows that this section refers to a motion to dismiss the bill by reason of insufficiency to constitute a valid cause of action in equity, whereas the motion involved in this case was not a motion to dismiss the bill, but, as stated in our original opinion, was a motion to dismiss *the cause* on the ground that the complainant was a foreign corporation and could not maintain the suit because it had not complied with the provision of Chapter 14677 of the Laws of 1931. It can hardly be said that by providing for testing the sufficiency of a bill by motion to dismiss, Section 33 of the Chancery Act was designed to prohibit the use of all other varieties of motions in chancery causes. There are many kinds of motions, available for use for many purposes, both in chancery and law actions. See 42 C. J. 463-464, *et seq.,* wherein it is said that, "As usually defined, a motion is an application for an order." And again it is said: "Primarily a motion means an application for a rule or order made *viva voce* to a court or judge, but the term is now generally em-

ployed with reference to all such applications, whether written or oral."

In the recent case of Diaz v. Parkland Estates, 154 So. 199, the opinion in which was written by Mr. Chief Justice DAVIS, this Court said:

Failure of a defendant to plead the suspension of the corporation plaintiff's right to sue prior to entry of judgment in its favor, is immaterial, since the statute imposes a duty on the courts to recognize and enforce its terms and provisions whenever it is called to the court's attention that the right of a corporation attempting to maintain proceedings before it has become suspended through the default in compliance with provisions of the law whose non-observance *ex proprio vigore* has that effect. This is so despite the fact that until the point is raised on the record, the right of a corporation to maintain a suit in the courts of this State will be presumed so long as the contrary is not made to appear."

This recent decision, just quoted from, is strongly persuasive of the correctness of our original opinion in this case, in that it holds that the statute imposes a duty on the courts to recognize and enforce its terms and provisions whenever it is called to the court's attention that a corporation attempting to maintain proceedings has not complied with the provisions of the law; and that this is so in spite of the fact that, until the point is raised, the right of the corporation to maintain the suit will be presumed "so long as the contrary is not made to appear."

This case is not in conflict with the case of Christie v. Highland Waterfront Company, 153 So. 784, as to the point involved in this case. In that case, the defendant, more than twenty days after the final decree for complainant, a domestic corporation, on the merits, moved the court to vacate the final decree and declare null and void all pro-

ceedings in the cause since January 1, 1932, on the ground that complainant corporation had not filed the report and paid the tax required by the statute. The motion to vacate was denied, and this ruling was upheld on appeal, it appearing that the corporation complainant complied with the statute before motion to vacate was heard by the court below. In the opinion, this Court called attention to the fact that to open up a final decree, after twenty days, in order to let in a defense, it must be shown that there was deceit, surprise or irregularity in obtaining the decree, etc.

In this case, the bill of the foreign corporation complainant was filed on February 21, 1933, long after Chapter 14677 of the laws of 1931 had gone into effect. The motion to dismiss the cause for failure of the complainant corporation to comply with said statute was interposed on April 3, and heard and denied by the court on April 25, 1933, and in that order the defendant was required to answer the bill of complaint. According to the record, the complainant corporation did not comply with the statute until after the answer was filed. It therefore appears that at the time the motion was made to dismiss the case for non-compliance with the statute and at the time such motion was heard and denied, the complainant had not complied with the provisions of the statute.

This Court has been quite liberal in its construction of the foreign corporation statute of 1907 as amended in 1915 (Sections 6026, *et seq.,* Comp. Gen. Laws of 1927) as well as the later Act of 1931 (Chapter 14677 of the Acts of 1931). The first statute required a foreign corporation to file with the Secretary of State a copy of its articles of incorporation, the payment of certain fees and the securing of a permit, as a condition precedent to the right to transact business or to acquire or hold property in this State, and also made a failure to comply therewith a penal offense.

The amendment of 1915 provided that a failure to comply should not affect the validity of any contract with such foreign corporation, but that "no action shall be maintained or recovery had in any of the courts of this State by such corporation * * * so long as such corporation fails to comply with the provisions of" the statute. The second, the statute of 1931, Chapter 14677, applies to both foreign and domestic corporations, and requires the filing of annual reports and the annual payment of a stock tax. It does not impose any penalties, such as fine and imprisonment, to enforce compliance, as does the foreign corporation statute above mentioned, but it does provide that non-compliance shall result in a forfeiture of the corporate and charter privileges, and, further that such non-complying corporation "shall not be permitted to maintain any action in any court in the State until such reports are filed and all fees due hereunder paid."

This Court has held that the foreign corporation statute of 1907 did not expressly prohibit the bringing of a suit before compliance therewith, and that where a defendant wished to question the plaintiff's right to sue on that ground, the defense should be specifically made, but without stating any particular method of interposing such defense. Farrell v. Forest Investment Co., 73 Fla. 191, 74 So. 216. In that case, the bill had alleged that the corporation complainant was authorized to do business in this State, and the answer had not denied it. No proof was offered by either side. The language of the opinion is that: "The rule seems to be that when the defendant wishes to raise the question of the corporation's right to maintain a suit in this State, he should make the defense specially. See 12 R. C. L. 98-101." See also Ronhoc Grove Co. v. Coe-Mortimer Co., 83 Fla. 370, 91 So. 265. And in Brecht v. Bur-Ne. Co., 91 Fla. 345, 108 So. 173, we held that the statute did not

prevent a non-complying corporation from defending a suit brought against it. Nor does the statute prevent a foreign corporation from enforcing payment for goods sold in interstate commerce (Circular Advertising Co. v. Am. Mercantile Co., 66 Fla. 96, 63 So. 3; Blackshear Mfg. Co. v. Sorey, 97 Fla. 437, 121 So. 103) nor from acquiring title to property in this State and executing notes and mortgages as a part of the transaction by which the property was acquired in view of the amendment of 1915 (Pape v. Finch, 102 Fla. 425, 136 So. 496; Harris v. Zeuch, 103 Fla. 183, 137 So. 135). Such non-compliance does not affect the title to property acquired, held and disposed of in violation of the statute of 1907, nor the validity of any contract with such non-complying foreign corporation, and such foreign corporation may even acquire a statutory mechanics or material man's lien for performing labor and furnishing material for the construction of a building in this State, which lien is subsequently enforceable by it in the courts of this State after it has qualified under the statute. Hogue v. D. N. Morrison Construction Company, 156 So. 377. See also McMullen v. Inland Realty Co., 113 Fla. 476, 152 So. 740.

In the opinion upholding the constitutionality of Chapter 14677 of the Laws of 1931, it was said, in regard to Section 5 of the Act, that the statute "does not declare a forfeiture, but merely suspends the charter privileges until the tax is paid," but the opinion did not deal with the exact question here presented. Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320.

As we have seen, Section 14677 imposes no criminal penalties for non-compliance, and no other sanctions for its enforcement except the forfeiture of its corporate and charter privileges, which, according to the last cited case, is not effective until such forfeiture is judicially determined

and declared, and the one other provision that such corporation shall not be permitted to maintain any action in any court in this State until it has complied with the statute by filing the required reports and paying the required fees. We adhere to our original decision that this latter provision of the statute should be enforced by the courts, if the statute is to be given any practical force or effect whatever, and that, therefore, in the instant case the court below erred in denying the motion to dismiss the cause, which motion was based upon non-compliance with the requirements of the statute as set forth in our original opinion.

It is not necessary for us to determine in this case whether a corporation which has not complied with the statute has the right to *institute* a suit, as distinguished from *maintaining* one, because, in the case at bar, the question raised by the defendant was the right of such corporation to *maintain* a suit without having complied with the statute. Undoubtedly, the statute, by clear language, denies this right. But, to the writer's mind, a corporation which has no right to maintain a suit in any of the courts of this State by reason of its non-compliance with our laws, has no right to institute the suit in the first instance, although it may not be possible for the defendant to raise the question until after the suit is instituted. The institution of a suit is the beginning of its maintenance. However, this question is not before us, and is not here decided.

Petition for rehearing denied.

DAVIS, C. J., and TERRELL, J., concur.

WHITFIELD and BUFORD, J. J., dissent.