177 So.2d 741 (1965)
FIRST MORTGAGE CORPORATION OF STUART, a Florida Corporation, Appellant,
v.
Mary L. deGIVE, Appellee.
No. 5232.
District Court of Appeal of Florida. Second District.
August 6, 1965.
*743 Elton H. Schwarz, Stuart, for appellant.
Ralph Geilich, of Williams & Geilich, Melbourne, for appellee.
SMITH, Judge.
Appellant, plaintiff below, has appealed the entry of a final summary decree in favor of appellee, defendant below. The parties will be referred to as they appeared in the lower court.
Defendant and one Bernard F. O'Connor entered into an agreement on March 12, 1959, the pertinent parts of which are as follows:
"Agreement
"This Agreement made and entered into the 12th day of March, 1959, by and between Mary L. deGive, hereinafter referred to as party of the first part, and Bernard F. O'Connor, hereinafter referred to as party of the second part,
"Witnesseth:
"Whereas the party of the second part has performed many and various services for the party of the first part with the understanding that he would be reimbursed on some basis satisfactory to the parties to this agreement and
"Whereas the party of the second part has this date paid in hand to the party of the first part the sum of One Thousand Dollars ($1,000.00) and
"Whereas the party of the first part owns * * * (certain property) * * * subject to a purchase money mortgage in favor of Doctor C.K. Wall and on which mortgage there is a principal payment due of Five Thousand Six Hundred and Eighty Dollars ($5,680.00) on January 19, 1959, which the party of the first part agrees to pay together with the interest to January 19, 1959, and the party of the second part will accept this agreement subject to an unpaid balance of Seventeen Thousand and Forty Dollars ($17,040.00) as of January 19, 1959, and subject to all the terms and conditions of the said purchase money mortgage for said principal balance and interest thereon from January 19, 1959.
"Now, therefore, the premises considered the party of the first part covenants and agrees to convey to the party of the second part or his nominee, an individual one-half interest in (certain real property-description omitted)
"The party of the first part agrees to convey the said property subject to taxes for 1959 and subject to purchase money mortgage of record in favor of C.K. Wall the principal balance of which is Seventeen Thousand and Forty Dollars ($17,040.00) as of January 19, 1959 * * *.
"The party of the second part in exchange for the said deed of conveyance agrees to release the party of the first part from all claims which he has for services heretofore rendered to the party of the first part on any account and in full from the beginning of time *744 up to the day and date of the execution of this agreement.
"This agreement is made upon consideration of the agreements each with the other as herein contained and in consideration of the prior promises of the party of the first part to pay for said services and in consideration of the rendition of said services by the party of the second part."
The agreement was signed by defendant and O'Connor, was witnessed by two subscribing witnesses, acknowledged, and recorded on December 28, 1959.
Subsequently, on June 30, 1959, O'Connor, joined by his wife executed an instrument entitled "Assignment of Contract." This instrument recited that in consideration for the sum of $3,600, O'Connor and his wife assigned to Anchorage Mortgage Company all their right, title and interest in the agreement between defendant and O'Connor. This instrument was signed by O'Connor and his wife, was witnessed by two subscribing witnesses, and was acknowledged before a Notary Public. The instrument was accompanied by a written agreement, dated June 30, 1959, between O'Connor and Anchorage Mortgage Company to the effect that upon the payment of the sum mentioned in the Assignment of Contract, Anchorage Mortgage Company would reassign the assignment to O'Connor and his wife. The O'Connors also executed a promissory note, dated June 30, 1959, payable to Anchorage Mortgage Company in the amount of $3,600 and due on June 30, 1960.
On August 29, 1959, O'Connor and his wife executed another promissory note payable to Anchorage Mortgage Company. This note was for $1,000 and was due on June 30, 1960. O'Connor and his wife also executed an instrument, dated the same day, entitled "Modification of Assignment of Contract" which recited that in consideration of the sum of $1,000 the Assignment of Contract dated June 30, 1959 was modified to read $4,600 instead of $3,600 but that said Assignment would remain unchanged in all other respects.
Thereafter, on May 12, 1960, O'Connor and his wife executed a deed naming defendant as grantee. The deed conveyed to her all of the O'Connors' right, title and interest to the real property described in the agreement between O'Connor and defendant stating that it was the intention to convey to defendant "all interest which Bernard F. O'Connor has in and to the * * * [described real estate] * * * including but not limited to all interest under the agreement made and entered into between the grantee and the said Bernard F. O'Connor dated March 12, 1959 * *." The deed also stated that the conveyance was made "subject to any rights which Anchorage Mortgage Company may have in and to the one-half (1/2) interest hereby conveyed."
O'Connor defaulted in the payment of the promissory notes described above, and plaintiff, who was Anchorage Mortgage Company's successor in interest, filed its complaint against defendant. Plaintiff prayed that the agreement between O'Connor and defendant dated March 12, 1959 be declared to be an absolute conveyance of the one-half interest in the property described therein; or, in the alternative, that the Assignment of Contract and the attendant documents be declared a mortgage; and that this mortgage be foreclosed. Defendant answered admitting the execution of the agreement and denying generally all other allegations. Defendant alleged further that under the agreement O'Connor undertook to perform certain acts and agreed to make certain payments due on a mortgage on the property, but that O'Connor "defaulted on his obligations under said contract."
Both parties moved for summary final decree upon the pleadings, depositions, and affidavits, and the chancellor granted a summary final decree in favor of defendant.
*745 In order to determine the correctness of the chancellor's ruling, we must ascertain what legal effect the various instruments have on this admittedly unusual and complex problem. We turn first to the "Agreement" of March 12, 1959, between defendant and O'Connor.
Plaintiff has contended that the agreement operated as an absolute conveyance to O'Connor of a one-half interest in the subject property. It relies upon the case of Tucker v. Cole, 1941, 148 Fla. 214, 3 So.2d 875, for the proposition that no prescribed form is essential to the validity of a deed or to make it operative if it makes known the transaction. We have no quarrel with the rule stated in that case, but do not feel it applicable to the facts before us. In Tucker v. Cole, supra, the Supreme Court held that the words "Know All Men By These Presents, that I * * * have this day bargained and sold, aliened, confirmed and delivered unto * * * (the vendee), a certain tract or parcel of land * * *" conveyed a present estate. There are no such words of present conveyance in the agreement between O'Connor and defendant. It states that defendant "covenants and agrees to convey" the subject real property upon certain conditions yet to be fulfilled. Examining the instrument in its entirety, it appears that the parties contemplated a subsequent deed of conveyance. Under such circumstances it is generally held that the contract will be construed as executory and not as a deed. Williams v. Paine, 1898, 169 U.S. 55, 18 Sup.Ct. 279, 42 L.Ed. 658; Jones v. Continental Royalty Co., 5th Cir.1941, 115 F.2d 731; Smith v. Bunston, 1925, 72 Mont. 535, 234 P.2d 836; Norwegian Lutheran Church of America v. Armstrong, 1941, 112 Mont. 528, 118 P.2d 380; Continental Royalty Co. v. Marshall, Ct. of Civ.App.Texas, 1951, 239 S.W.2d 837.
We hold, therefore, that the agreement of March 12, 1959 between O'Connor and defendant did not operate as an absolute conveyance but constituted merely a contract for the sale of real property. Under the agreement defendant became a vendor and O'Connor a vendee and, as such, O'Connor was vested with a beneficial or equitable interest in the property, subject to defendant's lien upon the property as security for the payment of the purchase price according to the terms of the agreement. Jasper v. Orange Lake Homes, Inc., Fla.App. 1963, 151 So.2d 331; Aycock Bros. Lumber Co. v. First National Bank of Dothan, 1907, 54 Fla. 604, 45 So. 501. This equitable interest of the purchaser is generally considered to be assignable; Walton Land & Timber Co. v. Long, 1939, 135 Fla. 843, 185 So. 839; Pierce & Stevenson v. Jones, 1933, 109 Fla. 517, 147 So. 842, 88 A.L.R. 192; and may also be the subject of a mortgage. Holbrook v. Betton, 1853, 5 Fla. 99; Harris v. Zeuch, 1931, 103 Fla. 183, 137 So. 135; 36 Am.Jur. Mortgages, § 35.
With this in view we must next consider the legal effect of O'Connor's Assignment of Contract to Anchorage Mortgage Company, the agreement to reassign accompanying this Assignment, and the "Modification of Assignment of Contract."
Plaintiff contends that these instruments fall within the provisions of § 697.01, Fla. Stat., F.S.A., which provides that all conveyances and other instruments of writing conveying or selling property, either real or personal, for the purpose of securing the payment of money shall be deemed mortgages. We agree with this view. The Assignment of Contract itself appears to be absolute on its face, but it is accompanied by the agreement between Anchorage Mortgage Company and the O'Connors providing for reassignment in the event the $3,600 mentioned in the Assignment of Contract is paid. Furthermore, this agreement states that the assignment was made to secure the payment of the promissory note for $3,600 in favor of Anchorage Mortgage Company dated the same day as the assignment and agreement to reassign. The "Modification of Assignment of Contract" *746 has the effect of merely increasing the amount secured by the assignment.
The statute in question, § 697.01, Fla. Stat., F.S.A., is to be liberally construed. Torreyson v. Dutton, 1940, 145 Fla. 169, 198 So. 796. An instrument must be considered a mortgage regardless of its form, if, when taken alone or in connection with the surrounding facts, it appears to have been given for the purpose of securing the payment of money. Pittman v. Milton, 1915, 69 Fla. 304, 68 So. 658. Applying these rules to the instruments before us, it becomes clear that they were given for the purpose of securing the payment of money and fall within the purview of § 697.01, Fla. Stat., F.S.A. We hold, therefore, that the Assignment of Contract, the accompanying agreement to reassign, and the Modification of Assignment of Contract, when considered together, constituted a mortgage of O'Connor's interest in the subject property.
The agreement between defendant and O'Connor recites, inter alia, that "* * * the party of the second part [O'Connor] has this date paid in hand to the party of the first part [defendant] the sum of One Thousand Dollars ($1,000.00) * * *" This does not appear to be controverted by either side either in the pleadings or in defendant's deposition and affidavit. Thus it would appear that O'Connor at least partially performed under the agreement. This partial performance by O'Connor created an interest in the land which could be mortgaged. Sheehan v. McKinstry, 1922, 105 Or. 473, 210 P. 167, 34 A.L.R. 1315. A mortgage given by one holding land under an executory contract for its purchase covers his interest, whatever it may be, at the date of the mortgage, and the mortgagee cannot be ousted of his rights by a subsequent rescission or reconveyance by the original parties. Young v. Clay, 1932, 139 Or. 427, 10 P.2d 602; Norlin v. Montgomery, 59 Wash.2d 268, 367 P.2d 621. Thus, O'Connor's deed back to defendant, at a date subsequent to his mortgage to Anchorage Mortgage Company, did not operate to cut off its interest in the agreement.
The mortgage by a purchaser of his interest in a contract for the sale of real property merely gives the mortgagee the right to complete the purchase if the mortgagor refuses to do so, and the mortgagee takes no greater rights than the purchaser had. In other words, the mortgagee acquires a right to purchase the property for the consideration stipulated in the contract of purchase, and the enforceability of the mortgage depends upon the condition that the contract be kept in force by the subsequent performance of its terms. Young v. Clay, supra; Sheehan v. McKinstry, supra; Nelson v. Bailey, 1959, 54 Wash.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400; 59 C.J.S. Mortgages § 184.
According to the terms of the agreement, O'Connor agreed to execute a release to defendant of all claims he might have against her. The agreement itself is clear and unambiguous in this respect, but the affidavits and depositions do not establish whether or not the release was ever given to defendant.
In her deposition, defendant states first that "there is some sort of release which Mr. Snow (her former attorney) obtained from Mr. O'Connor." Later on, however, she stated that the release she was referring to was not a release pursuant to the terms of the agreement. Still later the following colloquy took place:
"Q. Do you know whether or not your attorney at that time, Mr. Snow, had Mr. O'Connor execute a specific release releasing you from any compensations that may be due him for services?
A. No, I don't.
Q. You don't know?
A. I don't recall ever seeing any such thing."
*747 Defendant's affidavit states that O'Connor was to give her a release and that "neither plaintiff nor O'Connor ever performed under the agreement for deed." O'Connor's affidavit, on the other hand, does not mention the release, but states merely that he never qualified "on either of these grounds for delivery of a deed." The summary judgment rule requires that evidence presented on summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fla.R. Civ.P. 1.36, 30 F.S.A. The foregoing and other parts of the affidavits submitted by the defendant are opinion testimony and legal conclusions that would not be admissible in evidence at a trial and the court should have disregarded the incompetent and inadmissible matter and given consideration only to the competent and admissible portions. Humphrys v. Jarrell, Fla. App. 1958, 104 So.2d 404. When so eliminated, the defendant has failed to demonstrate in the record "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law."
The chancellor recited in detail his findings of fact and conclusions of law upon which he based the summary final decree. It appears that the chancellor was unduly concerned about that part of the agreement which provided that O'Connor, in exchange for the deed, agreed to release deGive from all claims which O'Connor had for services theretofore rendered because this required a personal act by O'Connor which had not been performed. On this basis the chancellor concluded that the plaintiff could not perform. We have said that where a purchaser under a contract for the sale of land mortgages his equitable interest therein, the mortgagee acquires the right to perform in the purchaser's stead to prevent foreclosure of the mortgagee's security interest. In executing his mortgage, the purchaser must of necessity be deemed to have given his mortgagee the power to perform for him in all respects. Were it otherwise, the mortgage would have no value. While it is apparent from O'Connor's actions that he is no longer personally interested in performance, his mortgage of his equitable interest in the contract necessarily included the right to perform for and on his behalf that act as well as all other conditions which the contract required him to perform. The fact that O'Connor subsequently rescinded his agreement with deGive by his deed did not defeat the rights of plaintiff because the conveyance was specifically made subject to plaintiff's right. Furthermore, as we have pointed out above, the conveyance from O'Connor to defendant occurred after the execution and delivery of the mortgage and could not cut off plaintiff's known outstanding equity. Young v. Clay, supra; Norlin v. Montgomery, supra.
In addition to the clearly expressed agreement that O'Connor would release deGive, deGive further contends that the agreement requires another act of performance by O'Connor; that is, O'Connor's payment of the balance of the existing first mortgage. The agreement itself merely states that:
"* * * the party of the second part (O'Connor) will accept this agreement subject to an unpaid balance of Seventeen Thousand and Forty Dollars ($17,040.00) as of January 19, 1959, and subject to all the terms and conditions of the said purchase money mortgage for said principal balance and interest thereon from January 19, 1959."
It is not clear from this terminology exactly what O'Connor was supposed to do regarding the first mortgage. Thus, it is permissible to consider extrinsic or parol evidence and testimony to explain this ambiguity or uncertainty, and to determine the intent of the parties. The facts and circumstances surrounding the execution of the agreement, as well as the parties' subsequent actions may be considered if it is shown that such evidence is not inconsistent *748 with the purpose of the agreement. McClure v. Century Estates, Inc., 1928, 96 Fla. 568, 569, 120 So. 4; 13 Fla.Jur., Evidence, § 397.
Defendant, in her affidavit in support of a summary final decree, states that it was the intention of the parties that a deed was not to be executed and delivered until the first mortgage was paid by O'Connor. In her deposition, she was not specific as to O'Connor's duties with respect to the first mortgage. She did state, however, that O'Connor attempted to make a payment on the mortgage in the amount of $4,841.00 but that his checks "bounced." Defendant said she was forced to cover these bad checks to prevent foreclosure by the first mortgagee and was never reimbursed. There was also on file an affidavit by O'Connor stating that:
"* * * under that certain agreement for Deed dated March 1959, given me by Mary L. deGive providing for one-half interest in * * * (the subject property), upon the performance of certain business services and payment of one-half of the outstanding mortgage indebtedness then upon the property, [I] never qualified on either of these grounds for delivery of a deed."
O'Connor's affidavit seems to indicate he was only to pay half of the outstanding mortgage debt, while defendant's affidavit and deposition indicate he was to pay more than half, if not all, of the remaining indebtedness. Thus, there was a conflict as to the nature and extent of O'Connor's duty with respect to the first mortgage. While there does not seem to be much doubt that O'Connor did not make any payments at all, there is still a genuine issue of material fact as to what O'Connor's duties were in this area. This in turn presents an issue of what plaintiff, or its predecessor, would have had to have done to complete the purchase so that it could enforce its mortgage.
The agreement did not state a time within which the various acts were to be performed. When a time for performance is not specified in a contract for the sale of real property and time is not of the essence, it is sufficient if performance takes place within what is under the circumstances a reasonable time. 55 Am.Jur., Vendor and Purchaser, § 110; 91 C.J.S. Vendor and Purchaser § 99. As we have stated, plaintiff has the right to perform for O'Connor. There is a genuine issue as to whether or not a tender of performance by plaintiff to defendant would constitute a reasonable time under the circumstances.
Summary judgment or summary decree is a drastic remedy and should be granted only where the movant is entitled to judgment as a matter of law. If, after considering the affidavits, pleadings, depositions, and other documents on file, there is any doubt as to whether or not there is a genuine issue as to material fact, summary judgment should not be granted. Hayes v. Littleford, Fla.App. 1965, 173 So.2d 477; Harrison v. McCourtney, Fla.App. 1962, 148 So.2d 53. The pleadings, depositions, and affidavits, when given the benefit of all favorable inferences, are sufficient to generate issues as to material facts, and it was error to grant the summary decree. Although it might well be that the chancellor could resolve these conflicts in favor of defendant, this would involve an evaluation and credibility process which is not an aspect of the summary judgment procedure. Harvey Building, Inc. v. Haley, Fla.App. 1965, 175 So.2d 780.
We cannot agree with defendant's argument that plaintiff cannot complain of the summary decree since it also moved for summary decree. The fact that both parties moved for summary decree does not require a finding that there was no genuine issue of material fact, nor does it follow that there is, in fact, no such issue merely because both parties so contend. Chirico *749 v. Dew, Fla.App. 1959, 113 So.2d 597; West Shore Restaurant Corp. v. Turk, Fla. 1958, 101 So.2d 123; Shaffran v. Holness, Fla. 1957, 93 So.2d 94.
The summary decree is reversed.
SHANNON, Acting C.J., and KANNER, (RET.), J., concur.